## 35817. DRAKE v. THE STATE.

NICHOLS, Justice.

This is the direct appeal of Luther Thomas Drake, who was convicted and sentenced to life imprisonment for the murder of Donald Evans. The state did not seek the death penalty.

On September 9, 1972, Donald Evans, the pastor of the McIntosh Baptist Church in Newnan, Georgia, was found dead near the doorway of his home. He had been shot four times with a .32 caliber pistol. Death was caused by a gunshot wound through his head. The homicide appeared to be murder but the crime went unsolved for approximately six years.

During 1978, Jack Beckom and Drake were arrested and indicted for conspiracy to steal tires. Beckom proposed to tell the authorities about the Donald Evans murder in exchange for a probated sentence in the tire case and immunity for his part in the murder. The state accepted these terms.

Beckom testified in substance as follows during Drake's trial for the murder of Donald Evans: Drake told Beckom that Drake loved Evans' wife and would pay to have Evans killed. Beckom contacted Herman Leroy Drowdy, who agreed to kill Evans for one thousand dollars plus expenses. Drake accepted these terms. Drowdy flew into the Atlanta Airport on the night of

September 8, 1972, where he met Beckom. The victim was alone in his home that night because his wife and daughter were in the hospital. Beckom drove Drowdy from the airport to the victim's home in Newnan. When the victim opened the door of his home, Drowdy shot him with a .32 caliber pistol belonging to Beckom, which subsequently was wiped clean of fingerprints and thrown into the Chattahoochee River. Beckom and Drowdy then met with Drake, who paid Drowdy nine hundred dollars.

The jury also heard evidence from Evans' widow that Drake was a deacon in Evans' church and a pallbearer in his funeral; that Drake had told her he loved her and had tried to kiss her on more than one occasion before the homicide. Drake admitted to the investigating officer that he had told her he loved her.

The jury also heard testimony that the remaining one hundred dollars was paid to Drowdy by Beckom by certified letter mailed from White, Georgia.

After telling the investigating officers about his participation in the murder, Beckom agreed to have an electronic transmitting device placed on his person. Conversations between Beckom and Drake were recorded using this device and tapes of the conversations were played for the jury over Drake's objections. The gist of the conversations was that Drake and Beckom, through Beckom's arrangements, were going to get Drowdy to kill Hart, the witness against them in the tire conspiracy case, just like they had killed Donald Evans. Drake was not aware that Drowdy had died before Drake's recorded conversation with Beckom. During the taped conversations, Drake repeatedly asked Beckom to remain silent about the Evans murder.

When considered in the light favorable to the verdict, the foregoing evidence is sufficient to enable any rational trier of the facts to find each element of the crime of murder beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Crawford v. State,* 245 Ga. 89 (263 SE2d 131) (1980); *Stinson v. State,* 244 Ga. 219 (259 SE2d 471) (1979).

1. Drake first contends that the trial court erred in failing to suppress the tape recordings in their entirety because they were made in violation of his Sixth

Amendment right to counsel. Massiah v. United States, 377 U.S. 201 (84 SC 1199, 12 LE2d 246) (1964). Massiah speaks to circumstances in which incriminatory statements are elicited from a defendant without permission of his counsel employed or appointed in a case in which he already has been indicted. *Gibson v. Ricketts,* 244 Ga. 482 (2) (260 SE2d 877) (1979); *Jackson v. State,* 236 Ga. 895 (1) (225 SE2d 908) (1976). Although Drake had been indicted and was being represented by Mr. Hamilton in the tire conspiracy case at the time the electronic listening device was utilized to obtain the tape recordings, he was not then under indictment for the murder of Donald Evans; nor was he then represented by Mr. Hamilton in regard to the murder investigation. Six years earlier he had been represented by Mr. Sanders in connection with the early stages of 'the murder investigation, but Mr. Sanders did not thereafter represent him either in the tire conspiracy case or in the present murder case. Massiah does not forbid interrogation of a witness known to be represented by counsel in another case. Hoffa v. United States, 385 U.S. 293 (87 SC 408, 17 LE2d 374) (1966); United States v. Crook, 502 F2d 1378 (3d Cir. 1974). The first enumeration of error is without merit.

2. Drake next contends that the trial court erred in failing to suppress the tapes because they were made in violation of Code Ann. §§ 26-3001 through 26-3006, and because Beckom did not voluntarily consent to use of the electronic device.

Drake's consent to the secret recordings was not required. Beckom's consent was all that was required albeit that the conversations did not come under any exception set out in Code Ann. § 26-3006 and no warrant was obtained under Code Ann. § 26-3004. *State v. Birge,* 240 Ga. 501 (241 SE2d 213) (1978).

Relying on the law relating to the voluntariness of confessions, Drake contends that Beckom's consent to utilization of the listening device was not voluntary because his cooperation with the investigating officers was induced by a "hope of benefit", that is, by an offer of immunity from prosecution for the murder of Donald Evans. Code Ann. § 38-411; *Smith v. State,* 222 Ga. 438 (3)

(150 SE2d 676) (1966); *Phillips v. State,* 206 Ga. 418, 420 (c) (57 SE2d 555) (1950).

The question of whether or not the test utilized to determine the voluntariness of a confession should be used to determine the voluntariness of consent to employ the listening device is not presented for decision in this case because the transcript does not support Drake's assertion that immunity was offered in return for use of the device. Immunity was offered in return for Beckom's statement. Immunity did not depend upon whether or not Beckom consented to use of the device. Beckom's testimony on this point is clear and uncontradicted. "Q. Did you agree to do this willingly? A. Willingly. That wasn't even a part of the deal. I just agreed to do it." No error has been made to appear in this regard. United States v. Osser, 483 F2d 727, 730 (3d Cir. 1973); cert. den. 414 U. S. 1028. The second enumeration of error is without merit.

3. Enumerations of error three through eight will be discussed together since each of these enumerations involves the question of whether or not Drake's reputation or character improperly was put in issue by the state's introducing evidence of Drake's involvement in two other crimes: the tire stealing conspiracy and the attempt to kill Hart, the witness to the tire stealing conspiracy.

The third, fourth and fifth enumerations of error complain of the failure of the trial court to expunge from the tapes all discussions between Drake and Beckom as to these other crimes. The sixth, seventh and eighth enumerations of error complain of questions asked to, and answers elicited from, respectively, the investigating officer, GBI agent Paul Musick, defendant's accomplice, Jack Beckom, and the defendant himself by the district attorney. All these questions and answers contained references to the other two crimes.

Drake argues at length that the tire stealing conspiracy offense and the attempted witness elimination offense are entirely separate from the murder of Donald Evans, the tire stealing offense having been separately indicted and the witness elimination offense having been severed on defendant's motion that was unopposed by the

state.. The separateness of the three offenses is not, however, the critical point in the present case. Evidence that is otherwise relevant or material to the issues in a criminal case does not become inadmissible simply because it concerns separate offenses, or because it incidentally puts a criminal defendant's character or reputation in evidence. *Spencer v. State* 236 Ga. 697, 700 (4) (b) (224 SE2d 910) (1976). The tapes corroborate the testimony of Beckom, Drake's accomplice to the Donald Evans murder, and point directly to Drake's guilt. Repeatedly, Drake told Beckom that he never would talk to the investigating officers about the murder and repeatedly he asked Beckom not to talk to them either. Drake's expressed willingness to pay money to Beckom with which Beckom would hire Drowdy to kill Hart, the witness against them in the tire stealing conspiracy case, just as they had hired Drowdy to kill Evans, not only points directly to his participation in the killing of Evans but illustrates as well as his mental processes; his intent; that he is a person willing to hire a professional killer to eliminate persons who stand in his way. *State v. Luke,* 232 Ga. 815 (209 SE2d 165) (1974); *Todd v. State,* 243 Ga. 539 (5) (255 SE2d 5) (1979). The jury was entitled to hear the entire statements of Drake in the full context in which they were spoken rather than hearing only those excerpted portions in which Drake admitted his knowledge of and participation in the killing of Evans.

Drake opened the door to the questions from the prosecution directed to Agent Musick and to Drake by raising through testimony an issue as to why he was arrested without a warrant and why he was not allowed bond in the murder case. Furthermore, if error was committed by allowing the questions to be directed to Agent Musick, Jack Beckom and Drake containing references to the other two crimes, this error was harmless since other evidence of Drake's participation in the two crimes properly was before the jury. *Johnson v. State,* 238 Ga. 59 (230 SE2d 869) (1976).

The third through eight enumerations of error are without merit.

4. The ninth enumeration of error presents Drake's contention that the testimony of his accomplice, Jack

Beckom, was not sufficiently corroborated. Defendant's own words during the taped conversations provide substantial corroboration of his participation in the murder. A defendant's attempts to conceal his participation in an offense can corroborate his accomplice's testimony regarding his participation. *Llewellyn v. State,* 241 Ga. 192, 193 (1) (243 SE2d 853) (1978); *Smith v. State,* 245 Ga. 168 (263 SE2d 910), (1980). Beckom's testimony about Drake's motive was corroborated by the victim's widow and by Drake's admission to the investigating officer concerning his amorous intentions and advances toward the victim's wife. Payment for the triggerman, Drowdy, and for the accomplice, Beckom, are corroborated by the mailing of the $100.00 check to Drowdy from White, Georgia, and by Beckom's receipt from Drake of the 1967 Thunderbird automobile. This corroborating evidence is sufficient. *Birt v. State,* 236 Ga. 815 (225 SE2d 248) (1976). The ninth enumeration of error is without merit.

5. The tenth and eleventh enumerations set forth Drake's contentions that the trial court erroneously refused to charge certain of his requests to charge stating the principles of law set forth in Massiah v. United States, supra. In Division 1 of this opinion, Massiah was determined to be inapplicable under the facts of this case. Accordingly, the tenth and eleventh enumerations of error are without merit.

6. The twelfth enumeration of error is without merit because the trial court's charge taken as a whole adequately charged the law regarding corroboration of the testimony of an accomplice. Beckom was an accomplice within the meaning of these rules requiring corroboration despite the fact that he later was granted immunity from prosecution.

7. The thirteenth enumeration of error sets forth Drake's contention that the trial court erred in failing to give his request to charge on impeachment of the witness Beckom by proof that Beckom had been convicted of a crime involving moral turpitude. " 'A witness cannot be discredited even by his own testimony that he had been convicted of an offense involving moral turpitude; it is necessary to introduce an authenticated copy of the record

of the court in which he was convicted'." *Rolland v. State,* 235 Ga. 808, 811 (221 SE2d 582) (1976); *Daniels v. State,* 234 Ga. 523, 524 (216 SE2d 819) (1975). Accordingly, Beckom's admissions on the stand about his convictions for crimes involving moral turpitude cannot be used to impeach him. Since authenticated copies of the records of Beckom's convictions were not introduced by Drake, the trial court did not err in failing to give the requested charge. The case of *Moore v. State,* 231 Ga. 301 (201 SE2d 432) (1973), is distinguishable from the present case in that Moore was attempting to rehabilitate his alibi witness who had admitted under direct examination by the defense his prior convictions for crimes involving moral turpitude. Moore therefore could not complain that authenticated records of conviction were not introduced. In the present case, Drake was attempting to impeach the prosecution witness Beckom. As the party seeking to impeach the witness, Drake should have introduced authenticated records of convictions. *Rolland v. State,* supra; *Daniels v. State,* supra. The thirteenth enumeration of error is without merit.

8. Drake did not demur to the indictment. Accordingly, the trial court did not err in denying his motion in arrest of judgment unless the alleged defects in the indictment were so great as to cause the indictment to be absolutely void. *State v. Eubanks,* 239 Ga. 483, 485 (238 SE2d 38) (1977); *Ivie v. State,* 151 Ga. App. 496, 497 (260 SE2d 543) (1979). The indictment charged, in relevant part, that Drake did "unlawfully and with malice aforethought hire the killing of Donald Evans with a pistol . . ." This language is sufficient to charge Drake with being a party to murder. The fourteenth enumeration of error is without merit.

*Judgment affirmed. All the Justices concur.*

SUBMITTED MARCH 21, 1980 — DECIDED MAY 20, 1980.

*James B. Hamilton, Larry King, Robert C. Dotson,* for appellant.
*William F. Lee, Jr., District Attorney, Arthur K. Bolton, Attorney General, W. Davis Hewitt, Assistant*

*Attorney General,* for appellee.