A96A1403. WILLETT v. THE STATE.
(479 SE2d 132)

BEASLEY, Chief Judge.

Willett appeals from his jury conviction of two counts each of aggravated sodomy, OCGA § 16-6-2, child molestation, OCGA § 16-6-4, and aggravated sexual battery, OCGA § 16-6-22.2, and the denial of his motion for new trial.

On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and the defendant

no longer enjoys the presumption of innocence. *King v. State*, 213 Ga. App. 268, 269 (444 SE2d 381) (1994). So viewed, the evidence reveals that Willett, a successful engineer who owned two businesses in Savannah, was divorced and living alone in a one-bedroom apartment with only one bed.

Since August 1988, law enforcement had conducted undercover surveillance of Jake Lynn, whom Willett had known since June 1985. The authorities had suspected Lynn of keeping a place of prostitution. In April 1990, the police raided Lynn's home and arrested him for operating an escort service. Because of Lynn's legal problems relating to this arrest, Willett was named guardian of two of Lynn's children, R. L., a seven-year-old son, and A. L., a younger daughter.

Lynn was the sales manager of a mobile home business, and he talked Willett into providing the capital to purchase the business in exchange for Lynn's sales expertise. In December 1991, the two became partners in the business.

Willett testified he often worked in the warehouse next door to the Lynn residence and felt sorry for R. L. because of the Lynns' "troubled family life." Willett spent a lot of time with R. L., taking him to the mall and to airshows and for rides in his private plane. He also bought gifts for R. L. and often sought Lynn's written permission before taking the child anywhere. R. L. spent the night at Willett's apartment approximately 30 times. Willett acknowledged that occasionally he and R. L. slept in the same bed together during these visits.

Christine Gulley was one of R. L.'s babysitters. Willett often stopped by when Gulley was watching R. L. and left accompanied with R. L. According to Gulley, R. L.'s personality was markedly different on most every occasion he spent with Willett. Gulley's eight-year-old brother D. B. sometimes accompanied her when she babysat for R. L. during the summer of 1992. D. B. and R. L. were friends prior to Gulley's involvement with the Lynn family. Gulley also noticed marked changes in D. B.'s behavior after he had been around Willett. She testified that sometimes after returning from Willett's warehouse, D. B. would sit in the middle of the floor and wet his pants. It was not until December 1992 when D. B. asked Gulley what a "faggot" was that Gulley became suspicious.

Gulley, who was skilled in child care, questioned her brother further and was told that Willett had touched him on his back and stomach. D. B. also disclosed that he had seen Willett touch R. L. inside the back of R. L.'s pants. Gulley immediately got in her car and stopped the first police officer she saw to report her brother's allegations.

Videotaped interviews of R. L. and D. B. were taken by a sex crimes detective trained in interviewing young children. D. B. told

the detective that Willett also touched his penis and buttocks, a claim he repeated at trial. R. L. also made incriminating statements about Willett during the interview and repeated them at trial.

Gulley testified that Willett called her on the phone and asked her "what would it take to get you to change your little brother's story?" Gulley agreed to meet Willett at a local restaurant and called the police to inform them of the meeting. The police wired Gulley and conducted surveillance from outside the restaurant. Willett claimed the meeting was set up by Gulley to extort money out of him in exchange for D. B.'s recanted testimony, and he also tape-recorded the conversation. Subsequent to the meeting with Gulley, Willett was indicted for the sex crimes committed against R. L. and D. B.

1. Willett first enumerates as error the trial court's denial of his motion for mistrial following this line of questioning of Willett by the prosecutor during cross-examination: "Q: Because you were so concerned about keeping your family together, you agreed to get counseling and treatment, didn't you? A: That's correct. Q: Because that's what DFCS [Department of Family & Children Services] wanted you to do? A: Right. Q: And your treatment psychologist was Wendy Osee, wasn't she? A: Yes, Sir. Q: She's a licensed psychologist, isn't she? A: I thought she was a psychiatrist. Q: That's an MD, isn't it? A: Yes, Sir. Q: We can't ask Dr. Osee any questions unless you give us permission to ask her questions because she's a licensed psychologist or psychiatrist; did you know that?"

The court denied the motion and gave the following curative instruction: "Jurors, the psychiatrist/patient privilege is a strong one. It's different from the doctor/patient privilege. The psychiatrist/patient privilege is a stronger one. What a patient tells his psychiatrist is confidential, as a matter of public policy. You should draw no inferences from the fact that the law keeps confidential communications made to a psychiatrist."

OCGA § 24-9-21 (5) provides: "There are certain admissions and communications excluded on grounds of public policy. Among these are . . . (5) Communications between psychiatrist and patient." The right to assert the privilege belongs to the patient. *Wilson v. Bonner*, 166 Ga. App. 9, 16-17 (5) (303 SE2d 134) (1983).

Willett argues that the prosecutor's reference to Willett's right to have the psychiatrist not testify was equivalent to a prosecutor commenting on a defendant's silence in violation of his right against self-incrimination[1] by implying he has something to hide, in this case,

---

[1] U. S. Const., Amend. 5; Ga. Const., Art. I, Sec. I, Par. XVI. The practice of the State commenting on the defendant invoking his privilege against self-incrimination and refusing to testify is also prohibited by both OCGA §§ 17-7-28 and 24-9-20. See also *Hicks v. State*, 256 Ga. 715, 721-722 (14) (352 SE2d 762) (1987), for discussion of the relationship of the

that the psychiatrist's testimony would have been unfavorable.

The purposes behind the two privileges are quite different. The psychiatrist/patient privilege is grounded in public policy "to encourage the patient to talk freely without fear of disclosure and embarrassment, thus enabling the psychiatrist to render effective treatment of the patient's emotional or mental disorders." *Wiles v. Wiles*, 264 Ga. 594 (1) (448 SE2d 681) (1994), citing 1 C. McCormick, McCormick on Evidence, § 98 at 369-370 (J. Strong 4th ed. 1992). But the privilege has never been accorded constitutional status. The Constitution protects an accused from being forced to possibly incriminate himself in the face of the coercive power of the State. See *Schmerber v. California*, 384 U. S. 757, 762 (II) (86 SC 1826, 16 LE2d 908) (1966). We do not do so now.

Even if we were to accept Willett's argument that the question was a constitutional affront, the right against self-incrimination is waived if the defendant testifies. *Leonard v. State*, 146 Ga. App. 439, 442 (3) (246 SE2d 450) (1978).

The State argues the question was permissible and for support cites *Wynn v. State*, 168 Ga. App. 132, 134 (2) (308 SE2d 392) (1983), which held that the prosecutor does not commit harmful error by informing the jury that the State has no power to compel a defendant's spouse to testify. The privilege not to testify belongs to the spouse and is beyond the defendant's control. The court in *Wynn* determined the State may relate this information in closing only if it makes no reference to the defendant not calling the spouse and does not argue that, from the defendant's failure to call the spouse, the jury may infer the defendant was not telling the truth. Id. at 135 (2). The State contends it was doing no more than commenting that it was Willett's right to have his psychiatrist testify. See also *James v. State*, 223 Ga. 677, 682 (5) (157 SE2d 471) (1967).

Willett responds that here, unlike *Wynn* and *James*, the prosecutor's comment improperly raised a negative inference as to Willett's failure to call a witness whom he could compel to testify. See *Wynn*, supra at 134 (2). He further urges that the manner in which the question was phrased suggests the State had tried to convince Willett to waive the privilege but to no avail. There is no evidence the State requested the waiver.

The State counters that since the issue of Willett seeing a psychiatrist had been raised earlier through the testimony of a DFCS social worker, without objection, the jury would have been left with the mistaken impression that the State, which carried the burden of proof, could have but did not call Willett's psychiatrist because the

psychiatrist/patient privilege and the Fifth Amendment privilege against self-incrimination.

psychiatrist would have testified favorably for Willett, who had no burden of proof.

Willett did not ask for a ruling on the question's allowability but instead sought the ultimate remedy of mistrial.

The court's curative instruction remedied what the court apparently regarded as an improper question and justified the denial of the motions for mistrial and new trial, especially in light of the overwhelming evidence of Willett's guilt. *Willingham v. State*, 212 Ga. App. 457, 458 (442 SE2d 4) (1994). Thus to the extent the question constituted error, it was harmless. "It is an old and sound rule that error to be reversible must be harmful. [Cit.]" *Rutledge v. State*, 152 Ga. App. 755, 756 (1) (a) (264 SE2d 244) (1979).

This ruling moots all other matters raised by Willett within this enumeration.

2. Willett contends the trial court erred in permitting the testimony of victim R. L. in that, although Willett made a timely demand for a list of witnesses pursuant to Ga. Const. Art. I, Sec. I, Par. XIV[2] and OCGA § 17-7-110,[3] R. L.'s proper address was not provided to him. Willett maintains that because he could not locate R. L., he had no opportunity to interview him prior to trial.

Although Willett filed a demand for a list of witnesses the prosecution might call for trial pursuant to the Constitution and statute, he did not request a list of addresses and telephone numbers of witnesses, as is required only by USCR 30.3.[4] Willett's failure to specifically request witness addresses pursuant to the uniform rules itself justified rejection of his motion to exclude the witness.

Secondly, the State nonetheless provided the addresses to Willett, including the last known address of R. L. The State was aware four months before trial that R. L.'s official address had changed to

---

[2] Ga. Const., Art. I, Sec. I, Par. XIV provides: "Every person charged with an offense against the laws of this state . . . shall be furnished . . ., on demand, with a list of the witnesses on whose testimony such charge is founded. . . ."

[3] OCGA § 17-7-110, which was repealed by Ga. L. 1994, p. 1895, § 1, effective January 1, 1995, provided: "Prior to his arraignment, every person charged with a criminal offense shall be furnished with a copy of the indictment or accusation and, on demand, with a list of the witnesses on whose testimony the charge against him is founded. Without the consent of the defendant, no witness shall be permitted to testify for the state whose name does not appear on the list of witnesses as furnished to the defendant unless the prosecuting attorney shall state in his place that the evidence sought to be presented is newly discovered evidence which the state was not aware of at the time of its furnishing the defendant with a list of the witnesses."

[4] "Upon request of defense counsel, the district attorney shall furnish to defense counsel as an officer of the court, in confidence, the addresses and telephone numbers of the state's witnesses to the extent such are within the knowledge of the district attorney, unless for good cause the judge allows an exception to this requirement, in which event defense counsel shall be afforded an opportunity to interview such witnesses prior to the witness being called to testify."

that of his DFCS social worker, but there is no evidence the State intentionally withheld this information. By his own account, Willett made no effort to locate R. L. until the week before the third scheduled trial date when the district attorney was out of state. The first time Willett brought the matter to the court's attention was immediately before jury selection. At no time did Willett ask the court for an opportunity to interview R. L. before he was to testify. Willett was permitted to review the audio and videotapes made of the child.

The purpose of the law requiring the list of witnesses is to avoid the defendant's being confronted at trial with witnesses whom he has not had the opportunity to interview prior to trial. *Bisard v. State*, 158 Ga. App. 62, 63 (2) (279 SE2d 310) (1981). When, as here, the witness is an alleged victim whose name is contained in the indictment, the State has turned over virtually its entire file to defendant, and the defendant has viewed a videotape of the child's statement to the prosecution, the defendant is not surprised or unable to interview the witness through lack of knowledge. *Garvin v. State*, 144 Ga. App. 396, 399 (5) (240 SE2d 925) (1977). Accord *Rutledge*, supra at 756 (1) (a); *State v. McBride*, 258 Ga. 321 (368 SE2d 758) (1988).

Furthermore, " '[w]hile the state, in most instances, should provide a defendant with the telephone numbers and addresses of its witnesses, this (is) not required.' [Cit.]" *Manning v. State*, 207 Ga. App. 181, 182 (3) (427 SE2d 521) (1993). Although USCR Rule 30.3 requires a district attorney, *on request*, to furnish a witness' address, "it does not require the district attorney to furnish the witness' whereabouts, which can vary from day to day," in order for the State to be in compliance with Rule 30.3. *Sibert v. State*, 259 Ga. 323, 324 (2) (380 SE2d 698) (1989). In addition, it was completely within the discretion of R. L.'s guardian whether to allow the defense counsel to interview R. L. in advance of trial. Id.

3. Willett next contends the court erred in admitting evidence of similar transactions, contrary to OCGA § 24-2-2. Evidence of the general character of an accused is inadmissible unless the accused chooses to put his character in issue. OCGA § 24-9-20. Evidence of a similar offense by a defendant is highly prejudicial, necessarily raising an inference that if he committed a particular crime in the past, he is likely to have committed the offense charged, if similar. *Williams v. State*, 261 Ga. 640, 641 (2) (a) (409 SE2d 649) (1991).

The State must make three affirmative showings at a hearing held pursuant to USCR 31.3 (b) before evidence of similar offenses may be admitted. First, it must be for some appropriate purpose and not to raise an improper inference that he committed the offense charged because he is a man of criminal character. Id. at 642 (2) (b); *Smith v. State*, 203 Ga. App. 3, 4 (416 SE2d 129) (1992). Purposes for which evidence of previous offenses may be offered include "[m]otive;

intent; absence of mistake or accident; plan or scheme, of which the crime on trial is a part; and identity." *Walraven v. State*, 250 Ga. 401, 408 (297 SE2d 278) (1982). When at issue, bent of mind and course of conduct are also legitimate purposes. *Kilgore v. State*, 251 Ga. 291, 297 (305 SE2d 82) (1983). " 'In child molestation cases evidence of similar or connected sexual offenses against children is admissible to corroborate the testimony of the victim as well as to show the lustful disposition of the defendant. [Cits.]' [Cit.]" *Sullivan v. State*, 162 Ga. App. 297 (291 SE2d 127) (1982); *Hill v. State*, 183 Ga. App. 404, 405 (1) (359 SE2d 190) (1987).

Second, the State must establish that the defendant was in fact the perpetrator of the prior offense. *Williams*, supra at 642 (2) (b).

Third, evidence of other offenses is admissible only if the State shows there is sufficient similarity or connection between them and the crime charged so that proof of the former tends to prove the latter. *Williams*, supra at 642 (2) (b). Implicit also "are the concepts that the evidence must be relevant to an issue in the case and that its probative value outweighs its prejudicial effect." *Hill*, supra.

(a) The prosecutor limited the similar transaction evidence to sexual acts Willett committed on his daughter and her friend approximately 12 years earlier. Willett does not challenge the assertion that he was in fact the person who committed the prior sex offenses. He maintains that there were insufficient similarities between the prior and present offenses and an insufficient logical connection between the two. He premises this on the difference in gender of the earlier and later victims, the dissimilarities in the sexual acts, and the remoteness in time.

The Court did not err in concluding that *Oller v. State*, 187 Ga. App. 818 (371 SE2d 455) (1988), permits admission of the evidence. Lapse of time "does not render the evidence automatically inadmissible . . . [but] is a factor to be taken into consideration when balancing the probative value of the evidence against its potentially prejudicial impact. . . . The sexual abuse of young children, regardless of the sex of the victims or the nomenclature or type of acts perpetrated upon them, is of sufficient similarity to make the evidence admissible." Id. at 820 (2); see also *Kirkland v. State*, 211 Ga. App. 805 (440 SE2d 542) (1994). There is no requirement that the prior offense be identical in every respect. *Smith v. State*, 203 Ga. App. 3, 4 (416 SE2d 129) (1992).

Here, in both instances, the earlier victims and these victims were all about eight years old and were close personal friends. By virtue of Willett's relationship as father of his daughter and guardian of R. L., he came to meet and know the best friend of each, and the friend became his subsequent victim. The molestation of each child began with repeated acts of genital fondling and progressed to oral

and attempted anal sodomy and included finger penetration of each of the children's rectums. The molestation of R. L. and of the friend of Willett's daughter frequently occurred when R. L. and the friend spent the night at Willett's house. In each incident, Willett threatened the young children if they told anyone.

The prior offenses were sufficiently similar to the crimes charged, and relevant to an issue, so that the evidence was not inadmissible as a matter of law.

(b) Willett also maintains that the State's notice of its intention to present evidence of a similar transaction, as required by USCR 31.1 and 31.3 (B), was insufficient in that it alleged simply "child molestation" with no description of any specific act which constituted the offense or a specific date on which the events occurred, but merely an approximate range of time. *Bohannon v. State*, 208 Ga. App. 576, 578 (2) (a) (431 SE2d 149) (1993), and *Tidwell v. State*, 219 Ga. App. 233 (464 SE2d 834) (1995), indicate otherwise.

Willett argues further that OCGA § 16-3-40 grants an accused the right to assert an alibi defense, and that if the State is permitted to "vaguely" reference some prior acts, defendants will be deprived of the ability to present the defense. This argument ignores the fact that well in advance of trial, Willett was in possession of all evidence, including documents, letters, audiotapes and videotapes, which the State intended to rely on in presenting the evidence. Willett cannot validly argue that he was hampered in presenting an alibi defense.

4. On cross-examination of Gulley, Willett's counsel began reading portions of the transcript of the tape-recording of the conversation between Gulley and Willett at the local restaurant. When counsel attempted to have Gulley confirm that Willett had made statements at the meeting declaring his innocence, the prosecutor objected to counsel reading "any self-serving declarations made by [Willett at the restaurant] unless and until he gets on the witness stand and can be cross-examined." The court instructed Willett's counsel to refrain from relating what Willett had said, but reminded him he could impeach Gulley with statements she made at the meeting. When Willett's counsel expressed frustration, the court ruled, "I sustain the District Attorney's objection that until he takes the stand, these statements by him are not admissible. Now you can recall her for cross-examination later if you want to."

In his final enumeration, Willett claims the court erred in not allowing counsel to read the statements because those comments were necessary to lay a foundation to impeach Gulley. He argues the effect of the ruling was to compel Willett to testify before he would be permitted to impeach the State's witness.

His characterization of the exchange is inaccurate. The statements made by Willett at the restaurant meeting were hearsay

under OCGA § 24-3-1, and could not be used to impeach Gulley. OCGA § 24-9-83 provides: "A witness may be impeached by contradictory statements previously made by him as to matters relevant to his testimony and to the case." Gulley could only be impeached by her own prior statements, not by any prior statements made by Willett. If Willett's words were to be used to contradict Gulley's, it was necessary for Willett to testify under oath. See *Bell v. State*, 71 Ga. App. 430, 433 (2) (31 SE2d 109) (1944). Compare *Muse v. State*, 160 Ga. App. 272 (1) (287 SE2d 224) (1981) (Right to "thorough and sifting cross-examination" does not include right to ask question that requires a hearsay answer).

Further, Willett's statements read by counsel were self-serving declarations, made while he was aware he was being tape-recorded. " '(I)t is a well-established general rule that a statement of a party, whether oral or written, which is of a self-serving nature is not admissible in his favor.' [Cit.]" *Grude v. State*, 189 Ga. App. 901, 903 (2) (377 SE2d 731) (1989); accord *Whitehead v. State*, 255 Ga. 526, 528 (5) (340 SE2d 885) (1986).

Moreover, Willett made no proffer of the excluded questions he wished to ask Gulley on cross-examination. "In order to be in a position to complain of the abridgement of the right of cross-examination, a party to a legal proceeding or his counsel must either ask the questions he desires to ask or state to the court what questions he desires to ask and then interpose timely objection to the ruling of the court denying the right to propound the questions." *Bradford v. State*, 182 Ga. App. 337, 338 (5) (355 SE2d 735) (1987).

Willett was also not denied the right to call Gulley as his own witness. As in *Walls v. State*, 161 Ga. App. 625 (2) (288 SE2d 769) (1982), so here: "Assuming arguendo that the court improperly limited the scope of cross-examination of this witness, there was no showing what the examiner intended to show by the examination or how appellant had been harmed. Under such circumstances, we must conclude, even assuming such error, that it was highly improbable such error contributed to the conviction or otherwise harmed the appellant."

Willett argues this matter is controlled by *Childress v. State*, 266 Ga. 425, 434-438 (4) (467 SE2d 865) (1996), but it is distinguishable. In *Childress*, the Supreme Court ruled that the trial court had correctly determined that, under OCGA § 24-9-83, before the state's key witness could be impeached by her prior inconsistent statements, the defense would have to lay a foundation by calling to her mind with as much certainty as possible the time, place, person and circumstances attending the former statements. The Supreme Court noted that pursuant to OCGA § 24-9-82, a witness may be impeached by disproving the facts to which she testified. Alleged statements by the key wit-

ness to another witness, whether or not they were true, tended to suggest that the key witness may have witnessed the victim's death and if that were the case, they clearly contradicted the key witness' earlier testimony. The Supreme Court noted the statements were not hearsay, because they were not offered to prove the truth of the matter asserted, and the statements were accordingly admissible under OCGA § 24-9-82. In this case, the statements of Willett were hearsay, since they were offered to prove the truth of the matter asserted, that he was innocent. See also *Horne v. State*, 155 Ga. App. 851, 856 (11) (273 SE2d 193) (1980).

"Although a defendant is entitled to a thorough and sifting cross-examination of a witness, OCGA § 24-9-64, the scope of such examination is within the sound discretion of the trial judge. [Cit.] This discretion will not be disturbed by an appellate court 'unless manifestly abused.'" *Thomas v. Clark*, 188 Ga. App. 606, 608 (4) (373 SE2d 668) (1988); *Kessel v. State*, 236 Ga. 373 (223 SE2d 811) (1976). As stated in *Walls*, supra, "we hesitate to be critical of the trial court's exercise of discretion in limiting the scope thereof where the cross-examination was not within the traditional scope of such examination [cit.], that is to inquire into the basis for the witness' knowledge or to show bias or otherwise diminish the value of the witness' direct examination."

*Judgment affirmed. Birdsong, P. J., and Blackburn, J., concur.*

DECIDED DECEMBER 5, 1996 — 

*Gregory N. Crawford*, for appellant.

*Spencer Lawton, Jr., District Attorney, Gregory M. McConnell, Assistant District Attorney*, for appellee.

