A97A1952. HARWELL v. THE STATE.
(497 SE2d 672)

BEASLEY, Judge.

Harwell was convicted of armed robbery (OCGA § 16-8-41 (a)) and aggravated assault with intent to rob (OCGA § 16-5-21 (a) (1)). He and an accomplice used a stun gun to rob the assistant manager at Harwell's former place of employment, a restaurant. According to the victim, the robbers "stunned . . . or shocked [him] down the leg maybe four times on their way out" with the money. Although the assailants wore stocking masks, the victim observed the robbers' facial characteristics and was familiar with the lead robber's voice and "person." He identified Harwell as an assailant while examining a police photographic lineup some two weeks after commission of the crimes charged. A new trial was denied.

1. The first alleged error is the denial of Harwell's motion to exclude the testimony of a witness who was not on the State's

witness list.

Applicable in this case is OCGA § 17-7-110, which was repealed by Ga. L. 1994, p. 1895, § 1, effective January 1, 1995, after Harwell's indictment. It provided: "Prior to his arraignment, every person charged with a criminal offense shall be furnished with a copy of the indictment or accusation and, on demand, with a list of the witnesses on whose testimony the charge against him is founded. Without the consent of the defendant, no witness shall be permitted to testify for the state whose name does not appear on the list of witnesses as furnished to the defendant unless the prosecuting attorney shall state in his place that the evidence sought to be presented is newly discovered evidence which the state was not aware of at the time of its furnishing the defendant with a list of the witnesses."

The purpose of this law was to give the defendant reasonable opportunity to interview a witness before trial. *Willett v. State*, 223 Ga. App. 866, 870-871 (2) (479 SE2d 132) (1996). It is undisputed that, seven days before trial, the State's attorney verbally informed Harwell's counsel that the State would be calling an unlisted witness to testify at trial; that the State's attorney gave defense counsel this witness' address and telephone number at least four days before trial; and that defense counsel contacted the unlisted witness before trial but she "refused to talk to him." When defendant moved at trial to exclude her testimony, the court directed the State's attorney to compel the witness to talk to defense counsel. The State's attorney complied, as did the unlisted witness.

Defendant was not harmed by the State's failure to include the witness on the written list. The court did not abuse its discretion in denying the motion to exclude her testimony. See *Logan v. State,* 170 Ga. App. 809 (318 SE2d 516) (1984) (defendant not prejudiced by oral notification prior to trial); see generally *White v. State*, 253 Ga. 106, 109-110 (3) (317 SE2d 196) (1984).

2. The court did not err in denying defendant's requested charge on impeachment. The reason is that defendant failed to proffer authenticated copies of the records of the two State's witnesses targeted. *Drake v. State*, 245 Ga. 798, 803 (7) (267 SE2d 237) (1980).

3. Using the word "or," the court charged the jury two of the alternative methods of committing "aggravated assault" as found in OCGA § 16-5-21 (a) (1) and (2). The indictment charged only that aggravated assault was committed because there was an assault "with intent to rob." It did not encompass assault "[w]ith any object, device, or instrument which when used offensively against a person is likely to or actually does result in bodily injury." Harwell contends this additional charge requires reversal. But the jury could not have been misled so that it convicted Harwell of the unindicted subsection (2) instead of the indicted subsection (1).

(a) The foreman wrote on the back of the indictment "guilty" of "Count #2," and in Count 2 the indictment charged only subsection (2). That document is what the jury had out with it to study and decide upon. In writing on the back of the very indictment charging aggravated assault with an intent to rob, the jury was hardly confused that it was convicting him of assault with an offensive weapon likely to result in serious physical injury. *Green v. State*, 221 Ga. App. 694, 695 (2) (472 SE2d 457) (1996), upheld a conviction of aggravated assault (even though the entire statute had been charged and even though the indictment only mentioned striking the victim with a pistol) because the foreman, in signing the indictment, wrote they found the defendant guilty as charged. Although we do not have the "as charged" language, the logical conclusion that the jury which signs the indictment was not misled still applies.

(b) Three other cases have held the jury was not confused or misled by an overbroad instruction where the judge also read the indictment to the jury verbatim, as is the case here. See *Thomas v. State*, 268 Ga. 135, 141 (17) (485 SE2d 783) (1997) (upheld conviction where indictment charged assault with handgun but court also charged assault with intent to rob or rape; no jury confusion because "the trial court read the indictment verbatim in advising the jury of the offense of assault with a deadly weapon"); *Chandler v. State*, 213 Ga. App. 46, 47 (2) (443 SE2d 679) (1994) (similar aggravated assault indictment and jury charge; conviction upheld because "[w]hile any reference to attempted rape or robbery certainly was extraneous, 'we find it highly unlikely that the jury was misled by (this portion of) the charge, since the court also read the indictment to the jury verbatim in advising them of the offense of (assault with a deadly weapon) charged against appellant' "); *Moore v. State*, 207 Ga. App. 892, 894-895 (2) (429 SE2d 335) (1993) (aggravated assault with deadly weapon charged, and jury also charged on assault with intent to murder, rape, or rob; conviction upheld because "the jury was read the language of the indictment along with the statute and no fair risk of prejudice to defendant exists, it being highly probable the verdict was not the product of a misleading instruction").

(c) Another case excused an overbroad jury instruction because "the trial judge confined the elements of the crime to those charged in the indictment by instructing the jury that the State bore the burden of proving every material allegation in the indictment. This instruction was sufficient to dispel any possible juror confusion about the necessity of convicting [the defendant] for the acts charged in the indictment." (Citations and punctuation omitted.) *McClain v. State*, 220 Ga. App. 474, 475 (2) (469 SE2d 756) (1996). Here the judge gave a similar limiting instruction.

(d) The jury had no questions indicating it was confused by the

instruction as it related to the indictment, or confused because it detected that the instruction was broader than the indictment.

(e) The jury did find defendant guilty of armed robbery (Count 1), which required it to find that defendant took the money and checks "with intent to steal same." Thus it undeniably found the element described in OCGA § 16-5-21 (a) (1), and it would not matter legally if the jury found in addition that the assault with the stun gun was "with . . . [an] object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury." OCGA § 16-5-21 (a) (2). See *Green*, supra, 221 Ga. App. at 696 (2) (upholding conviction of aggravated assault by striking with a pistol: "we do not believe that [defendant's] due process rights were violated simply because the jury may have *also* believed that the assault was committed with the intent to rob").

(f) But no reasons arose for it to have done so in the first place. There was no jury argument by the State that this latter charge is what it proved or that it was seeking a conviction of this subsection; there was no evidence that the stun gun was the type of weapon described in the subsection; the victim testified only that "They picked up the bag and stunned me or shocked me [with the stun gun] down the leg maybe four times on their way out." He was not hurt seriously, as is evident from the fact that "the second they left" he called 911 and when the detectives arrived he talked to them for about an hour. There is no mention of his going to the hospital or seeking any medical attention.

We must give some credit to the jury for common sense, for knowing that a stun gun used in the manner it was used in this case is not an "object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury." It was not used to beat him over the head, for example.

(g) *Perguson v. State*, 221 Ga. App. 212, 213 (1) (470 SE2d 909) (1996), says the error in charging the jury the unindicted alternative is reversible only "if a reasonable possibility exists that the jury may convict the defendant of committing the crime in a way not alleged in the indictment." There is not a reasonable possibility of that in this case.

The United States Supreme Court articulates the test as one of "reasonable likelihood," as recently recognized and applied by the Supreme Court of Georgia in *Bridges v. State* 268 Ga. 700, 703 (492 SE2d 877) (1997). The latter instructs: "[E]rroneous jury instructions are not judged in isolation, but rather are considered in the context of the entire jury charge and the trial record as a whole to determine ' "whether there is a *reasonable likelihood* that the jury has applied the challenged instruction in a way that violates the Constitution." ' [Cit.]" Second, an erroneous jury charge is not reversible unless it

causes harm."[1]

In *Bridges*, a conviction following an erroneous charge on reasonable doubt as to innocence, a matter of constitutional dimension, survived appellate review when measured by these principles. Surely the charge complained of here is subject to no greater scrutiny. Such an examination of the charge results in the conclusion that giving it did not constitute reversible error.

(h) *Griffin v. State*, 214 Ga. App. 813 (449 SE2d 341) (1994), upon which appellant relies heavily, is distinguishable. The State introduced evidence that Griffin and other defendants "mercilessly beat" the victim with their feet and fists, and the court instructed the jury " 'the State contends that shoe-clad feet and fists were weapons used by one or more of the defendants in commission of aggravated assault.' " Id. at 814, 815 (2). This gave the jury ample reason to find aggravated assault other than by assault by shooting with a handgun as alleged in the indictment.

The unrelated portion of the charge did not constitute reversible error in this case.

4. The dissents would rule that the two offenses must be merged for sentencing. Harwell did not object in the trial court to the sentences imposed nor contends that the aggravated assault and armed robbery offenses merged. Thus, the matter was not preserved for appellate review. *Bridges v. State*, 223 Ga. App. 339 (477 SE2d 913) (1996). Nor did he raise this issue in his enumerations of error, which is another reason we do not consider it on appeal. *Lee v. State*, 265 Ga. 112, 116 (8) (454 SE2d 761) (1995); *Norman v. State*, 197 Ga. App. 333, 336 (4) (398 SE2d 395) (1990). *Queen v. State*, 210 Ga. App. 588 (2) (436 SE2d 714) (1993), is distinguishable in that the defendant there challenged the legality of his sentence, albeit on other grounds. Harwell has not challenged his sentence. The statement in *Bryant v. State*, 229 Ga. App. 534, 536 (494 SE2d 353) (1997), that a case is regarded as pending until finally disposed of by imposition of a lawful sentence does not mean that we will ferret out errors not objected to nor raised on appeal.

*Judgment affirmed. Andrews, C. J., Birdsong, P. J., Smith and Ruffin, JJ., concur. McMurray, P. J., and Eldridge, J., dissent.*

McMURRAY, Presiding Judge, dissenting.

I concur as to Divisions 1 and 2 of the majority opinion, but dissent with regard to Division 3 because I cannot go along with the majority's holding that the trial court's unauthorized jury charge could not have reasonably caused the jury to convict defendant of

---

[1] See OCGA § 5-5-24 (c).

committing aggravated assault in a manner not alleged in the indictment, i.e., with an offensive weapon rather than with intent to rob.

In addition to instructing the jury as to aggravated assault with intent to rob as charged in the indictment, the trial court charged that aggravated assault is committed when a person commits an assault with an "instrument which when used offensively against a person is likely to or actually does result in serious bodily injury." Defendant contends this additional charge requires reversal. I am constrained to agree.

It is error to instruct the jury that an offense may be committed in more than one manner where only one manner is alleged in the indictment and no remedial instructions are given to limit the jury's consideration to that particular manner. *Dukes v. State*, 265 Ga. 422, 423 (457 SE2d 556). See *Griffin v. State*, 214 Ga. App. 813, 815 (2) (449 SE2d 341). In the case sub judice, the trial court not only failed to give remedial instructions limiting the jury's consideration to the charge describing the elements of the indicted offense, the trial court emphasized its overly broad aggravated assault charge by prefacing it with the general (and inaccurate) direction to the jury that, "[i]n count two of the indictment this defendant is charged with the offense of aggravated assault." These deficiencies, however, require reversal only if there is a reasonable possibility that the jury may have convicted defendant of committing the crime charged in a way not alleged in the indictment. See *Perguson v. State*, 221 Ga. App. 212, 213 (1) (470 SE2d 909); *Green v. State*, 221 Ga. App. 694 (2) (472 SE2d 457). This requires an examination of the evidence supporting the crimes charged.

While the evidence adduced at trial reveals that defendant and an accomplice used a "stun gun" to rob the assistant manager at defendant's former place of employment, the victim testified that, after seizing the loot, the robbers "stunned . . . or shocked [him] down the leg maybe four times on their way out." This proof not only authorizes defendant's conviction for armed robbery, but also authorizes a finding that the armed robbery was complete when the robbers assaulted the victim by stunning or shocking the victim with a stun gun.[2] *Glass v. State*, 199 Ga. App. 530, 532 (2) (405 SE2d 522). Accordingly, believing it likely that the jury convicted defendant of aggravated assault with an offensive weapon rather than with intent

---

[2] Contrary to the majority, I believe the victim's testimony that the robbers "stunned . . . or shocked" him with a stun gun would authorize a finding that such a device was used against the victim as an offensive weapon. While the majority's "common sense" analysis regarding this issue may indicate that a stun gun did not seriously injure or permanently harm the victim, the majority's analysis does not exempt the likely prospect that the jury resolved the issue against defendant and in favor of the trial court's erroneous jury instruction. See *Butts v. State*, 153 Ga. App. 464 (265 SE2d 370), and cits.

to rob (as indicted), I would reverse defendant's aggravated assault with intent to rob conviction.

Neither the majority's holding nor the fact that defendant mercilessly "stunned . . . or shocked" the victim with a stun gun cures the irreparable fact that the State indicted defendant for the wrong offense. Defendant's conviction for aggravated assault with intent to rob must, sooner or later, be reversed because the facts supporting defendant's armed robbery conviction also support his conviction for aggravated assault with intent to rob. Such a merger of offenses requires reversal when, as in the case sub judice, a defendant is sentenced separately for the merged offense. *Redding v. State*, 193 Ga. App. 50, 52 (4) (386 SE2d 907).

I am authorized to state that Judge Eldridge joins in this dissent.

ELDRIDGE, Judge, dissenting.

I concur fully in Presiding Judge McMurray's dissent in this case. I write separately to make the following points.

1. When an illegal sentence is discovered by this Court through a review of related issues, we will address it. *Queen v. State*, 210 Ga. App. 588, 589-590 (2) (436 SE2d 714) (1993) (Beasley, P. J., for the majority).

If the majority is correct and the jury found Harwell guilty of aggravated assault with intent to rob, then the offense merges with the armed robbery conviction, and Harwell's conviction and sentence for aggravated assault are illegal and void. *Griffin v. State*, 172 Ga. App. 184 (322 SE2d 295) (1984). While Harwell may be prosecuted for both offenses, he "may not, however, be *convicted* of more than one crime if [one] crime is included in the other." (Emphasis supplied.) OCGA § 16-1-7 (a) (1).

Further, we recently held that when a void sentence has been imposed, *"the case is to be regarded as pending until it is finally disposed of by the imposition of a lawful sentence."* (Emphasis in original.) *Bryant v. State*, 229 Ga. App. 534, 536 (494 SE2d 353) (1997). Thus, regardless of whether the issue was raised properly, if a void sentence has been imposed, this Court cannot "affirm" the conviction, because the case is still *pending* as a matter of law. The promotion of such legal limbo makes little sense.

A sentence which is void ab initio may be challenged at any time. Judicial economy and fairness "dictate that that which should have been done be done." *Jefferson v. Ross*, 250 Ga. 817, 819 (301 SE2d 268) (1983).

2. As to the merits of Harwell's claim, the majority finds that we can be reasonably sure the jury convicted on the indicted offense, aggravated assault with intent to rob, because:

(a) The trial court "read the indictment to the jury verbatim in advising them of the offense."

It is important to recognize that this is *not* the law. The cases relied upon by the majority for the above proposition did not base their holdings solely upon the "verbatim" recitation of the indictment as does the majority. In each of the cases cited by the majority: (1) there was no evidence to support the incorrect jury charge; (2) the incorrect charge was inapplicable under the facts of the case; *and* (3) the indictment was read verbatim.[3] That is not the situation here, where the problem is that we *do* have evidence of the unindicted offense, and the trial court authorized the jury to convict on the unindicted offense under Count 2 of the indictment.

(b) The jurors wrote "Count two: guilty" on the back of the "very indictment."

This is meaningless when the trial judge told the jury that Count 2 could be committed in more than one way. Further, the jury did not write "guilty *as charged*" as they did in another case incorrectly cited by the majority as authority for upholding this conviction, *Green v. State*, 221 Ga. App. 694, 695 (472 SE2d 457) (1996).

(c) There was no evidence that the stun gun is an "object or device likely to cause serious injury" so as to support a conviction on the unindicted form of aggravated assault.

If the stun gun was a sufficient "offensive weapon" to support Harwell's armed robbery conviction, under the facts of this case it was sufficient to support a conviction for aggravated assault with an object or device likely to cause injury.[4]

Even the trial judge, when questioned by defense counsel on why he charged aggravated assault with a device likely to cause injury, stated, "Well, didn't he have an offensive weapon? Or device? The charge fits the facts of the case."

If the judge was "confused" as to which form of aggravated assault was proper under the facts and the indictment, this Court can be reasonably sure the jury was as well.

In fact, herein the prosecution made a mistake by indicting for the wrong form of aggravated assault; the trial court made a mistake by charging the jury with the right, but unindicted, form of aggravated assault; and in my view, this Court makes a mistake by upholding it all.

---

[3] *Thomas v. State*, 268 Ga. 135, 141 (485 SE2d 783) (1997); *Chandler v. State*, 213 Ga. App. 46, 47 (443 SE2d 679) (1994); *Moore v. State*, 207 Ga. App. 892, 894-895 (429 SE2d 335) (1993).

[4] Especially when the evidence showed that shocks from the gun forced the victim to the floor in pain, and an officer testified that the recovered stun gun was an offensive weapon.

3. Accordingly, the aggravated assault conviction must go, whether by recognizing that the jury charge thereon requires a reversal, as advocated by Presiding Judge McMurray and myself, or by recognizing that the void conviction and sentence thereon require a reversal and remand, as is the case under the majority's analysis.

DECIDED MARCH 12, 1998

*Hagler, Hyles, Adams & McKenna, Clark C. Adams, Jr.,* for appellant.

*J. Gray Conger, District Attorney, Margaret E. Bagley, Assistant District Attorney,* for appellee.