S98G1052. HARWELL v. THE STATE.
(512 SE2d 892)

BENHAM, Chief Justice.

Appellant Shawn Harwell was convicted of armed robbery and aggravated assault with intent to rob in connection with the taking of cash and negotiable instruments from a fast-food restaurant employee and the use of an electronic taser on the employee. The Court of Appeals affirmed the judgment of conviction entered against appellant (*Harwell v. State,* 231 Ga. App. 154 (497 SE2d 672) (1998)), and we granted Harwell's petition for a writ of certiorari to examine three holdings of the Court of Appeals.

The State presented evidence that the assistant manager of a fast-food restaurant was robbed by two armed masked men minutes after closing the business for the night. One of the perpetrators displayed a stun gun (i.e., an electronic taser), put it to the victim's back, and pushed the victim to the restaurant's safe from which was removed cash and negotiable instruments. As the two robbers left, one of them used the stun gun to shock/stun the victim four times in the leg. The victim described the perpetrators to investigating officers and said something was familiar about the voice of the robber armed with the stun gun. Some weeks later, two persons arrested for possession of an incendiary device were questioned about a stun gun also found in their possession. Those persons, Adrian and Schunda Mack, told investigating officers that the electronic taser belonged to

providing insurance coverage for the rental vehicle. *Jones v. Wortham,* supra, 201 Ga. App. at 670-671.

appellant and that he had told them that he had used the stun gun to rob a fast-food pizza restaurant where he formerly had been employed. On cross-examination by defense counsel, Adrian admitted to having a felony conviction for possession of a sawed-off shotgun. On direct examination by the assistant district attorney, Schunda admitted to having previously been convicted of financial transaction card fraud. The armed robbery victim identified appellant as the perpetrator and as a former employee who had worked with the victim as the restaurant "closer" for several months.

In affirming appellant's convictions, the Court of Appeals ruled that appellant had not been entitled to a jury instruction on impeachment of a witness by conviction, and that the trial court had not erred when it instructed the jury on two methods of committing aggravated assault — the method alleged in the indictment (aggravated assault with intent to rob), as well as a method purportedly established by the evidence (aggravated assault with a weapon likely to cause serious bodily injury). The Court of Appeals refused to determine whether Harwell's conviction and sentence for aggravated assault merged as a matter of fact or law into his conviction and sentence for armed robbery, concluding that the issue was not preserved for appellate review. *Harwell v. State*, supra, 231 Ga. App. 154 (2, 3, 4). We granted appellant's petition for a writ of certiorari to the Court of Appeals to examine these three issues.

1. We address first the trial court's decision to instruct the jury on alternative methods of committing aggravated assault. A criminal defendant's right to due process may be endangered when, as here, an indictment charges the defendant with committing a crime in a specific manner and the trial court's jury instruction defines the crime as an act which may be committed in a manner other than the manner alleged in the indictment. *Dukes v. State*, 265 Ga. 422 (457 SE2d 556) (1995). See also *Martin v. State*, 268 Ga. 682 (8) (492 SE2d 225) (1997). The giving of a jury instruction which deviates from the indictment violates due process where there is evidence to support a conviction on the unalleged manner of committing the crime and the jury is not instructed to limit its consideration to the manner specified in the indictment. Id. In the case at bar, no limiting instruction was given; therefore, the deciding factor is whether there was evidence from which the jury could conclude that appellant committed aggravated assault by assaulting the victim with a weapon likely to cause serious bodily injury. See *Thomas v. State*, 268 Ga. 135 (17) (485 SE2d 783) (1997).[1]

---

[1] We agree with a point on this issue made by Judge Eldridge's dissent – a verbatim reading of the indictment to the jury does not cure the due process ailment brought about by instructing the jury on an unindicted manner of committing the crime charged. As Judge

The victim testified at trial that he saw the robbers' weapon when they accosted him and he recognized it as a stun gun.[2] The evidence shows that the victim, having seen the weapon, did as he was instructed by the armed robbers. The thieves used the stun gun four times on the victim after he had given them the restaurant proceeds, and both Macks testified that appellant had told them that the victim had "hollered like a little bitch" when appellant had struck the victim with the stun gun. The detective who recovered the stun gun from the Macks described it as "a defense or offensive weapon." While there is no dispute that the stun gun constituted an "offensive weapon" which authorized appellant's conviction for armed robbery (OCGA § 16-8-41 (a)), the State maintains there was no evidence from which the jury could conclude that the stun gun was a weapon "likely to . . . result in serious bodily injury. . . ." OCGA § 16-5-21 (a) (2).[3]

Whether a weapon is deadly or one likely to cause serious bodily injury is a question for the jury, which may consider all the circumstances surrounding the weapon and the manner in which it was used. *Williams v. State*, 127 Ga. App. 386 (1) (193 SE2d 633) (1972). See also *Arnett v. State*, 245 Ga. 470 (3) (265 SE2d 771) (1980). Cf. *Smith v. Hardrick*, 266 Ga. 54 (2) (464 SE2d 198) (1995) (where we recognized that there were devices which, though not deadly weapons per se, could be found by the jury to be deadly weapons depending on the circumstances, and suggested that, should the State believe a defendant's actions constitute aggravated assault under § 16-5-21 (a) (2), it alleged in the indictment the weapon used and that it was a deadly weapon or one likely to cause serious bodily injury). The victim's acts of cooperation when he recognized that his assailants were armed with a stun gun, the testimony of the victim's intense reaction to being repeatedly assaulted by the gun's electronic discharge, and the legal recognition that the stun gun was an "offensive weapon" constituted sufficient evidence from which the jury could conclude that the victim was assaulted with a weapon likely to result in serious bodily injury. Accordingly, appellant's due process rights were violated by the jury charge given by the trial court, and

---

Eldridge noted, the three cases relied upon by the Court of Appeals' majority (*Thomas v. State*, supra, 268 Ga. 135 (17); *Chandler v. State*, 213 Ga. App. 46 (2) (443 SE2d 679) (1994); and *Moore v. State*, 207 Ga. App. 892 (5) (429 SE2d 335) (1993)), were decided on other grounds — that there was no evidence to support the extraneous jury charge.

[2] The General Assembly has defined "stun gun" as a battery-powered device which emits an electrical charge in excess of 20,000 volts or is capable of incapacitating a person by an electrical charge. OCGA § 16-11-106 (a).

[3] While it was not evidence presented to the jury, we note that, in response to defense counsel's objection to the charge during the post-instruction conference, the trial court asked rhetorically whether appellant had an offensive weapon or device and concluded that "[t]he charge fits the facts of the case."

appellant's aggravated assault conviction must be reversed and the sentence vacated. *Dukes v. State*, supra, 265 Ga. at 424.[4]

2. Lastly, we address the Court of Appeals' ruling upholding the trial court's decision not to give appellant's verbally-requested charge on impeachment by conviction. As noted earlier, two witnesses for the State each acknowledged having been previously convicted of a felony, one witness in response to an inquiry from the ADA during direct examination and the other in response to a question from appellant's counsel on cross-examination. No certified copy of either witness' prior conviction was proffered or admitted into evidence.

We granted the writ of certiorari on this issue because, as one commentator has succinctly stated: "The court needs to clarify their cases [on proving prior convictions for purposes of impeachment]." Rumsey, *Agnor's Georgia Evidence* (3rd ed.), § 5-8, n. 13. It has long been the rule that a witness may be impeached by his/her conviction of a crime of moral turpitude[5] and that the "highest evidence of the fact" of such conviction is an authenticated copy of the record of the court in which the witness was convicted. *Howard v. State*, 144 Ga. 169 (86 SE 540) (1915). For that reason, it is error for a trial court to allow a witness to testify about a prior conviction over the objection that the testimony is not the best evidence of that fact. *Carroll v. Crawford*, 218 Ga. 635 (2) (129 SE2d 865) (1963). See *Ledesma v. State*, 251 Ga. 885 (4) (311 SE2d 427) (1984). See also *Roberts v. State*, 267 Ga. 669 (2) (482 SE2d 245) (1997); *Clarke v. State*, 239 Ga. 42 (3) (235 SE2d 524) (1977); *Rolland v. State*, 235 Ga. 808, 811 (221 SE2d 582) (1976); *Daniels v. State*, 234 Ga. 523 (4) (216 SE2d 819) (1975); *Adams v. State*, 229 Ga. App. 381 (2) (494 SE2d 92) (1997), where, in each case, this Court or the Court of Appeals upheld the trial court's sustaining of an objection to an attempt to impeach a witness through the testimony of the witness concerning a prior conviction. The requirement that a party prove the existence of a prior conviction of a witness by introducing a certified copy of the conviction is subject to waiver by opposing counsel's failure to voice a best evidence objection, in which case the testimony of a witness who admits having a prior conviction for a crime of moral turpitude is admissible as proper secondary evidence. *Moore v. State*, 231 Ga. 301

---

[4] Since appellant's aggravated assault conviction is reversed on this ground, we need not address his contention that the Court of Appeals erred when it refused to consider whether appellant's conviction for aggravated assault with intent to rob merged into the armed robbery conviction.

[5] A crime of moral turpitude has been defined as "[a]n act of baseness, vileness, or depravity in the private and social duties which [a person] owes to . . . fellow [persons], or to society in general, contrary to the accepted and customary rule of right and duty between [persons]." *Lewis v. State*, 243 Ga. 443, 444 (254 SE2d 830) (1979), quoting *Black's Law Dictionary*.

(1) (201 SE2d 432) (1973). See also *Thomas v. State*, 268 Ga. 135 (13) (485 SE2d 783) (1997); *McIntyre v. State*, 266 Ga. 7 (4) (463 SE2d 476) (1995); *O'Toole v. State*, 258 Ga. 614 (4) (n. 2) (373 SE2d 12) (1988); *Williams v. State*, 251 Ga. 749 (12) (312 SE2d 40) (1983); and *Moret v. State*, 246 Ga. 5 (3) (268 SE2d 635) (1980), where this Court applied waiver to uphold the trial court's admission without objection at the defendant's pre-sentence hearing of the oral testimony of the prosecuting attorney concerning the defendant's prior conviction.

The above-stated legal theory is not without its aberrations, the most prominent of which is *Drake v. State*, 245 Ga. 798 (7) (267 SE2d 237) (1980), relied upon by the Court of Appeals in affirming the trial court's decision not to give a charge on impeachment by conviction. *Harwell v. State*, supra, 231 Ga. App. 154 (2). In *Drake*, this Court held that a defendant was not entitled to a charge on impeachment by conviction because the testimony of a witness admitting prior convictions for crimes of moral turpitude could not be used to impeach the witness since authenticated copies of the records of conviction had not been introduced. The opinion does not indicate whether an objection was made to the testimony. See also *Ledesma v. State*, supra, 251 Ga. 885 (4), where the Court recognized that the trial court erroneously allowed the testimony over objection, but concluded the trial court did not err in failing to give a requested charge on impeachment by conviction because the defendant "had failed to offer the proper evidence which would be the records of conviction."

*Drake* and *Ledesma* have as their source of authority either *Rolland v. State*, supra, 235 Ga. 808 (which quotes *Rewis v. State*, 109 Ga. App. 83 (3) (134 SE2d 875) (1964)), or *Timberlake v. State*, 246 Ga. 488 (6) (271 SE2d 792) (1980). In *Rolland*, the State made a best evidence objection to the testimony; in *Rewis*, the State made a best evidence objection and the appellate court ruled that the admission by the witness of convictions for crimes *not* involving moral turpitude could not be used to impeach the witness. *Timberlake* recognized the applicability of the best evidence rule to the impeachment of a witness by proof of a prior conviction, but held that the State was attempting to impeach by use of a prior inconsistent statement, not by prior conviction. In none of these cases was it held that introduction of a certified copy of a prior conviction is the exclusive means by which a witness may be impeached by prior conviction. In each case, however, the appellate court observed that a witness could not be discredited by his own testimony that he had a prior conviction for a crime of moral turpitude, but that it was necessary to introduce an authenticated copy of the record of the court of conviction. The *Drake* court took this observation and transformed it into a legal conclusion. As we have seen, the legal conclusion is an accurate statement of the law when a best evidence objection is voiced; without that limitation,

it is an incomplete and misleading statement of law. To the extent *Drake* holds that admission of an authenticated copy is the exclusive means by which a party may prove that a witness has been convicted of a crime of moral turpitude and thereby be entitled to a jury instruction on impeachment by conviction, it is disapproved.

We conclude that, in the absence of an objection, the testimony of a witness admitting a prior conviction for a crime of moral turpitude is sufficient evidence of the fact to authorize a charge on impeachment by conviction. *McIntyre v. State*, supra, 266 Ga. 7 (4). Where, as here, however, appellant did not submit a written request to charge on impeachment by conviction, the trial court did not err in failing to charge on the issue. See *State v. Stonaker*, 236 Ga. 1, 3 (222 SE2d 354) (1976). See also Uniform Superior Court Rule 10.3.

*Judgment affirmed in part and reversed in part. All the Justices concur.*

DECIDED MARCH 1, 1999 —
RECONSIDERATION DENIED APRIL 2, 1999.

*Hagler, Hyles, Adams & Hix, Clark C. Adams, Jr.,* for appellant.
*J. Gray Conger, District Attorney, Margaret E. Bagley, Assistant District Attorney,* for appellee.