## 66255. WYNN v. THE STATE.

CARLEY, Judge.

Appellant was indicted for murder. Tried before a jury, she was found guilty of voluntary manslaughter. Appellant appeals from the judgment of conviction and sentence entered on the guilty verdict.

1. Appellant exhausted her peremptory challenges in selecting the jury. One of those peremptory challenges was used to strike a prospective juror, Mrs. Fillingame, whom appellant had unsuccessfully attempted to strike for cause. Appellant enumerates as error the denial of her motion to strike Mrs. Fillingame.

During the voir dire of Mrs. Fillingame, it appears that equivocal and indefinite answers were given to several questions designed to establish whether she possessed the impartiality necessary to serve on the jury. To give but one example, when Mrs. Fillingame was asked whether "there could be a certain set of facts where [she] could find the [appellant] not guilty in this case," her reply was: "I don't know." After each such equivocal response, however, further questions were

propounded to Mrs. Fillingame in order to secure a more definite answer to whether she would or would not be an impartial juror. Mrs. Fillingame's responses to those follow-up questions were consistently indicative of impartiality. For example, after Mrs. Fillingame gave the equivocal answer to the question quoted above, she gave an affirmative response to the following question: "If the evidence in the case was not sufficient to satisfy your mind that [appellant] was guilty beyond a reasonable doubt could you then find her not guilty?"

It is thus clear that the only definite answers given by Mrs. Fillingame established her lack of prejudice and that there were no responses affirmatively demonstrating that she could not and would not serve as an impartial juror. See *Cato v. State,* 72 Ga. 747 (2) (1884). Compare *Logue v. State,* 155 Ga. App. 476, 477 (1) (271 SE2d 42) (1980). " 'The opinion which disqualifies a juror from sitting in a criminal case depends on its nature and strength. Where a juror was put on the court as a trior, and the only evidence submitted to show his incompetency was that elicited from the juror himself, and from his examination it appeared that the juror had neither seen the crime committed nor heard any evidence on oath, and had no bias or prejudice against the accused, or fixed opinion as to the guilt of the accused which would not yield to the evidence and the instruction of the court, there was no abuse of discretion in holding the juror competent, although he may have said he 'had a little opinion' about the case.' " *Butler v. State,* 231 Ga. 276, 278-279 (201 SE2d 448) (1973). See also *Davis v. State,* 134 Ga. App. 750, 751 (216 SE2d 348) (1975); *Todd v. State,* 143 Ga. App. 619 (239 SE2d 188) (1977).

2. Appellant's husband, who was seated in his truck with the victim at the time of the homicide, elected to invoke his privilege not to testify. OCGA § 24-9-23 (Code Ann. § 38-1604). This election was properly made outside the presence of the jury. *Westbrook v. State,* 162 Ga. App. 130 (1) (290 SE2d 333) (1982). During the trial, appellant was the sole witness presented in her defense. Her testimony was essentially to the effect that she had fired shots at her husband's truck intending only to stop the vehicle, and that she had been totally unaware that the victim was seated in it. In the course of her testimony, appellant made references to certain conversations and events which had occurred shortly after the shooting and in which her husband was involved. Those conversations and events were, as testified to by appellant, of a somewhat exculpatory nature, indicating appellant's lack of prior knowledge of the presence of the victim and her lack of present intent to harm anyone, including her husband, when she had shot at the truck.

In closing argument for the state, the district attorney apparently sought to raise questions concerning that portion of

appellant's testimony which had referred to her husband's words and actions on the night of the homicide. In the course of presenting that argument, the district attorney made reference to the fact that the state "can't make [appellant's husband] testify. We can't call him ..." This remark went uncontested until such time as defense counsel had concluded his own closing argument, but before the jury was charged. See *Gregoroff v. State,* 158 Ga. App. 363, 364 (4) (280 SE2d 373) (1981), reversed on other grounds, 248 Ga. 667 (285 SE2d 537) (1982). At that point, a motion for mistrial was made on the basis that the district attorney's comment, quoted above, constituted impermissible argument on the failure of appellant's husband to testify. The motion was denied, and no curative instructions were given. Appellant, citing *James v. State,* 223 Ga. 677 (157 SE2d 471) (1967), enumerates as error the trial court's failure to take any ameliorative action.

In *James v. State,* supra at 682, the following comment in argument for the state was held to be reversible error: " 'Defendant's wife . . . was with the defendant at the occurrence, but she did not testify. Certainly, she could have explained what occurred and if the defendant were telling the truth she would have taken the stand and corroborated him.' " The basis for the holding that this argument was error was that "[a] wife is competent, but not compellable, to give testimony in any criminal proceeding for or against her husband. [Cit.] The privilege of refusing to testify belongs to the witness and not to the accused. The defendant did not have the power to produce his wife as a witness against her will, and no reference could properly arise that he was not telling the truth because she did not testify and corroborate his statement." *James v. State,* supra at 683. Since the privilege not to testify belonged to the wife, not the defendant, and the wife had "the right to do this for any reason favorable to her own interest, and the defendant could not require her presence as a witness [,i]t was thus not a legitimate subject matter of argument for counsel for the State that the defendant's wife did not testify." *James v. State,* supra at 684. Accordingly, the holding in *James v. State* is that the state may not argue the inferences which could be drawn from a defendant's failure to produce a witness, if that witness is the defendant's spouse who has elected to assert the statutory privilege not to testify and is therefore not a compellable witness. See *Shirley v. State,* 245 Ga. 616, 618 (266 SE2d 218) (1980); *Floyd v. Colonial Stores,* 121 Ga. App. 852, 862 (176 SE2d 111) (1970).

While appellant's husband elected not to testify and was therefore not a compellable witness, it is readily apparent that, unlike *James v. State,* there was no direct reference to *appellant's* failure to call her husband nor argument that, because she did not call him, the

jury could infer that appellant was not telling the truth. Instead, the district attorney merely made reference to the fact that the *state* was unable to produce appellant's husband. As has been discussed, the privilege not to testify belonged to appellant's spouse, not appellant herself. (*Young v. State,* 232 Ga. 285, 287 (206 SE2d 439) (1974)), and he had the right to invoke the privilege for any reason. It appears that the only "right" appellant derives from her husband's election not to testify, other than to have that election made outside the presence of the jury, is the right not to have an unwarranted negative inference drawn from her failure to produce a witness whose testimony is beyond her power to compel. *James v. State,* supra; *Shirley v. State,* supra; *Floyd v. Colonial Stores,* supra.

Without condoning the practice, it does not appear that it would be harmful error for the state to comment generally, without direct reference to the exercise of the spousal privilege, upon the fact that *it* has no power to call a defendant's spouse who has not given direct testimony, but whose words and actions are relied upon by the defendant as being somewhat corroborative of the defendant's own exculpatory testimony. Under these circumstances, such a comment by the state would be no more than a statement informing the jury that its failure to call the non-testifying spouse did not necessarily signify an acceptance of or acquiescence in a portion of the defendant's exculpatory version of the events to which he has testified. Just as the failure to call a non-compellable spouse should not give rise to an unwarranted negative inference against the defendant, a possibly negative inference should not necessarily arise from the state's failure to produce and question what is in essence a non-testifying corroborative witness for the defense. It is clear that the district attorney's comment in the instant case was at most a reference to an individual's election to exercise, for whatever reason, his own personal right of noncompellability and was not an erroneous and prejudicial direct invasion of appellant's "right" not to have that personal election, over which she had no control, give rise to an unwarranted negative inference against her. The trial court did not err in refusing to grant a mistrial or to give curative instructions.

*Judgment affirmed. Deen, P. J., and Banke, J., concur.*

Decided September 8, 1983 —
Rehearing denied September 23, 1983 — ▮▮▮▮▮▮▮

*Jesse G. Bowles III,* for appellant.
*Charles M. Ferguson, District Attorney,* for appellee.