## 66185. HANSEN v. THE STATE.

POPE, Judge.

Jerry Earl Hansen brings this appeal from the revocation of his probation. On April 21, 1982 appellant was sentenced to serve a total of six years on probation stemming from his guilty pleas to a misdemeanor and a felony. On December 14, 1982 the state petitioned to revoke appellant's probation, listing as grounds eight separate violations of the terms and conditions of the probation. A hearing was held on this petition on December 22 and following the presentation of the state's evidence, a verdict was directed in favor of appellant as to four of the grounds. At the conclusion of the hearing the trial court granted the state's petition and revoked appellant's probation based upon the evidence adduced in support of the four remaining grounds. The gravamen of appellant's enumerations of error on appeal is the trial court's denial of his motion to suppress. *Held:*

Construed in a light most favorable to the state, the evidence of record showed that at approximately 10:40 p.m. on December 4, 1982 Detective Murray of the Fulton County Police Department was patrolling an apartment complex on Roswell Road in Atlanta, a high crime area, in an unmarked patrol unit. He noticed a car in the parking lot pointed toward the exit, yet not in a parking space. As he passed by this vehicle he observed two men squatting down beside a white Buick automobile which was parked facing the apartment buildings. These men (one of whom was appellant) got up and walked hurriedly toward the car parked facing the exit, got in (appellant on the driver's side) and drove off. The officer pulled to the side and let this car pass by him. A short distance further, the two men pulled their car over and the officer passed by them. The officer went a short distance further and again pulled over to the side; eventually these two men passed by him again. The officer then radioed for assistance, and the car containing these two men was stopped on Roswell Road just outside the apartment complex.

Det. Murray spoke with both appellant and the other man in the car (Duncan) in order to determine why they were in the area. Appellant explained that he was looking for a lady, but he was unable to provide her name, address or telephone number. Appellant later explained that he was just out driving around looking for a party. In response to the officer's inquiry as to how long appellant had known the man with him in the car, appellant's answer was significantly different from Duncan's response. Both men were then placed under arrest for loitering or prowling in the apartment complex.

In plain view inside the car driven by appellant were several

devices, known as "slim jims," used to open locked car doors. There were also several coat hangers shaped for use in unlocking car doors and assorted tools such as pliers and screwdrivers. Also found were three Oklahoma vehicle tags for which neither appellant nor Duncan could offer an explanation. At this time appellant and Duncan were also charged with possession of tools for the commission of crime.

Before he began an inventory of the car, Det. Murray asked both appellant and Duncan who owned the vehicle; both responded that the other owned it. As the result of the inventory, the following items were found: some additional small tools—screwdrivers and punches; a .22 calibre revolver; several additional devices for opening locked cars; code books explaining how to make keys for different cars; a device used to make VIN plates; a machine used to make keys; 50—100 blank keys; and a device used to pull the switch off a steering column as well as another switch with key inserted commonly used to replace the removed switch. Also discovered in the car was a brown leather jacket which appellant identified as his. Inside the jacket pocket were several yellow documents indicating that certain repairs had been made on a car belonging to one Dotson. Also found were a tag receipt and two insurance cards for a 1981 Buick belonging to Daniel A. Dotson. During the course of the inventory, Det. Murray received a report of a car having been stolen from across the street from where appellant was apprehended. As a result of this report and the inventory, appellant and Duncan were also charged with motor vehicle theft and unlawfully entering an automobile.

William Knott testified for appellant at the hearing. He stated that the car in which appellant and Duncan had been arrested belonged to him, as did all the contents of the car. He also testified that he formerly owned an automobile parts business and now owned a wrecker service, and that the items found in his car were used in that business.

1. Appellant first contends that there was no reasonable suspicion for stopping his vehicle and detaining him. OCGA § 16-11-36 (Code Ann. § 26-2616) provides: "(a) A person commits the offense of loitering or prowling when he is in a place at a time or *in a manner* not usual for law-abiding individuals under circumstances that warrant a justifiable and reasonable alarm or *immediate concern* for the persons or *property* in the vicinity. (b) Among the circumstances which may be considered in determining whether alarm is warranted is the fact that the person takes flight upon the appearance of a law enforcement officer, refuses to identify himself, or *manifestly endeavors to conceal himself* or any object. . . . [A] law enforcement officer shall, prior to any arrest for an offense under this

Code section, afford the person an opportunity to dispel any alarm or immediate concern which would otherwise be warranted by requesting the person to identify himself and explain his presence and conduct." (Emphasis supplied.) Applying this Code section to the case at bar, Det. Murray clearly possessed sufficient specific articulable facts to justify a reasonable suspicion that appellant and Duncan were engaged in unlawful activity. See generally *Radowick v. State,* 145 Ga. App. 231 (1) (244 SE2d 346) (1978); cf. Delaware v. Prouse, 440 U. S. 648 (99 SC 1391, 59 LE2d 660) (1979).

2. Appellant next challenges the legality of his arrest for loitering or prowling on the ground that there was no probable cause. "Whether an arrest is constitutionally valid depends upon whether, at the moment the arrest was made, the officer had probable cause to make it; i.e., at that moment the facts and circumstances within [his] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the arrestee had committed an offense." *Williams v. State,* 164 Ga. App. 148 (1) (296 SE2d 739) (1982). "Probable cause need not be defined in relation to any one particular element, but may exist because of the totality of circumstances surrounding a transaction." *Cook v. State,* 136 Ga. App. 908, 909 (222 SE2d 656) (1975). Under the totality of the circumstances in this case—appellant's suspicious behavior at the apartment complex and his explanation thereof—Det. Murray was justified in believing that appellant had committed the offense of loitering or prowling. Thus, there was probable cause for appellant's arrest.

3. Appellant argues that the evidence found in his brown leather jacket (repair receipts, tag receipt and insurance cards) was illegally seized because the purpose of the search in this case did not comport with those purposes allowable pursuant to OCGA § 17-5-1 (a) (Code Ann. § 27-301). This argument is wholly meritless. The jacket was seized from the car that appellant was driving. As noted earlier, both appellant and Duncan claimed the other owned the car. Since both occupants of the car were arrested, no one remained to take custody of the car, which had been stopped in a traffic lane. Under these circumstances the police were authorized to impound the car. Cf. *State v. Ludvicek,* 147 Ga. App. 784, 786 (250 SE2d 503) (1978); *State v. McCranie,* 137 Ga. App. 369 (223 SE2d 765) (1976), and cits. It follows that the resultant inventory was proper. See generally *Thompson v. State,* 155 Ga. App. 101 (2) (270 SE2d 313) (1980). Moreover, since the items taken from the jacket had been stolen, the police were authorized to seize them pursuant to OCGA § 17-5-1 (b) (Code Ann. § 27-301).

4. There was testimony that the tools discovered in "plain view"

were such as could be and commonly were used in the commission of crime. Nevertheless, appellant asserts that these items were improperly seized because they were "perfectly legal" and not contraband. This assertion has no merit. See *Shearer v. State,* 128 Ga. App. 809 (3) (198 SE2d 369) (1973); see also *Walker v. State,* 130 Ga. App. 860 (2) (205 SE2d 49) (1974); *Cunningham v. State,* 128 Ga. App. 789 (1) (197 SE2d 871) (1973).

5. On the basis of our discussion in the foregoing divisions of this opinion, appellant's remaining allegations of error are not meritorious. There was sufficient admissible evidence of record to support the trial court's findings that appellant had failed to comply with the terms and conditions of his probation in that he had violated the penal laws of this state as charged. Accord, *Alligood v. State,* 160 Ga. App. 785 (287 SE2d 125) (1982).

*Judgment affirmed. Quillian, P. J., and Sognier, J., concur.*

DECIDED SEPTEMBER 20, 1983 —
REHEARING DENIED OCTOBER 6, 1983 — ▆▆▆▆▆▆▆

*Jack F. Witcher,* for appellant.
*William A. Foster III, District Attorney, Jeffrey L. Ballew, Assistant District Attorney,* for appellee.