## 70674. PRICE v. THE STATE.
### (334 SE2d 711)

CARLEY, Judge.

Appellant was indicted for aggravated assault against a peace officer. He was tried before a jury and, in giving its instructions, the trial court gave an unrequested charge on aggravated assault as a lesser included offense. The jury found appellant guilty of aggravated assault. A motion for new trial was denied and appellant appeals from the judgment of conviction and sentence entered on the jury's verdict.

1. Appellant's wife invoked her spousal privilege and elected not to testify at the trial. Over appellant's objection, the assistant district attorney was allowed to make the following statement in the State's closing argument: "Now, I don't know what [appellant's] wife would have testified to, we don't have the power to call her up here on the stand to testify. . . . I don't know what she would have said, if she had testified, but we do know what the other nine or ten State witnesses who testified said, and every single one of them pointed at the guilt of this man, and he says they were all lying. . . ." Appellant contends that this comment on the failure of his wife to testify constituted impermissible argument.

The spouse of the defendant in a criminal case is now a competent witness and is merely not compellable to give evidence for or against the defendant. OCGA § 24-9-23. The privilege against being compelled to testify belongs to the spouse, not the defendant. *Young v. State*, 232 Ga. 285, 287 (206 SE2d 439) (1974). However, the defendant is entitled to have the spouse's election made outside the presence of the jury. *Westbrook v. State*, 162 Ga. App. 130 (1) (290 SE2d 333) (1982). This is to protect the defendant from the prejudice that might result from the jury's knowledge that the spouse has elected not to testify in behalf of the defense. See *Colson v. State*, 138 Ga. App. 366, 369 (13) (226 SE2d 154) (1976). "[T]he exercise of the marital privilege reflects directly upon the marital partner. . . ." *Casper v. State*, 244 Ga. 689, 693 (261 SE2d 629) (1979). Once the spousal privilege has been invoked, the defendant is also entitled, during the course of the trial, "not to have that personal election, over which [he or] she had no control, give rise to an unwarranted negative inference against [him or] her." *Wynn v. State*, 168 Ga. App. 132, 135 (308 SE2d 392) (1983). For example, since the spouse is not a compellable witness at his or her personal election and "for any reason favorable to [his or] her own interest," the State is precluded from making a direct comment on the *defendant's* failure to call the spouse. *James v. State*, 223 Ga. 677, 684 (157 SE2d 471) (1967). Thus, although the general rule permits the State to argue the negative inference arising from the failure of the defendant to produce witnesses in his behalf, *James* establishes an exception to that rule when the unproduced wit-

ness is the defendant's spouse who has invoked the privilege and who is accordingly beyond the defendant's power to produce.

The State takes the position in the instant case that it is generally not impermissible for the State to comment on *its* inability to call a defendant's spouse who has elected to invoke the privilege not to testify. The State cites *Wynn v. State*, supra at 133 (2), for this proposition. In *Wynn*, it was undisputed that the defendant's husband had been seated next to the victim at the time of the homicide. In her testimony, the defendant in *Wynn* attributed certain post-homicide statements and actions to her husband, which attributed statements and actions were exculpatory and corroborative of the defendant's own explanation of the homicide. On these facts, we held: "*Without condoning the practice*, it does not appear that it would be *harmful error* for the [S]tate to comment generally, without direct reference to the exercise of the spousal privilege, upon the fact that *it* has no power to call a defendant's spouse who has not given direct testimony, but whose *words and actions* are relied upon by the defendant as being somewhat *corroborative* of the defendant's own exculpatory testimony. *Under these circumstances*, such a comment by the [S]tate would be no more than a statement informing the jury that its failure to call the non-testifying spouse did not necessarily signify an acceptance of or acquiescence in a portion of the defendant's exculpatory version of the events to which he has testified. Just as the failure to call a non-compellable spouse should not give rise to an unwarranted negative inference against the defendant, a possibly negative inference should not necessarily arise from the [S]tate's failure to produce and question what is in essence *a non-testifying corroborative witness for the defense*." (Emphasis in original in part and supplied in part.) *Wynn*, supra at 135.

Thus, it is clear that in *Wynn* we emphasized the existence of certain circumstances which entered into the ultimate determination of whether the State's comment gave "rise to an unwarranted negative inference against [the defendant.]" *Wynn v. State*, supra at 135. Accordingly, the ultimate holding in *Wynn* that the State's comment was not "erroneous and prejudicial" and that "[t]he trial court did not err in refusing to grant a mistrial or to give curative instructions" must be considered in the context of the circumstances presented in that case. *Wynn v. State*, supra at 135. We do not construe *Wynn* as establishing a general rule allowing the State to comment in every criminal case upon its inability to call the defendant's spouse.

It does not appear that the circumstances underlying the holding in *Wynn* existed in the instant case. The transcript reveals that, prior to appellant's testimony, the State had introduced witnesses who testified that appellant had fired shots at his wife earlier in the evening in question. During appellant's testimony, he disputed the State's

witnesses who had given that testimony. Thus, the wife's participation in the events was first raised as an *inculpatory* fact by the State. Appellant's testimony simply denied that underlying *fact* and at no point did he introduce into the case the subject of his wife's *own* after-the-fact exculpatory words or actions as corroborative of his exculpatory testimony concerning his subsequent act of firing at the police officers. Accordingly, appellant's wife was never attributed the status of an exculpatory eyewitness to the crime. Moreover, under the circumstances, the State was not faced with a negative inference arising from its *failure* to respond to contentions of the defendant concerning an exculpatory eyewitness to the crime itself. The jury could have believed either the uncorroborated testimony of appellant or the testimony of the State's witnesses concerning the fact of appellant's wife's involvement in the earlier events of the evening. It was appellant alone who faced the possibility of negative inferences arising from his wife's non-appearance as a witness. The State having raised the inculpatory issue of the wife's participation in the underlying events, the jury might well question appellant's veracity simply because his wife did not appear at trial to corroborate his factual version of the events.

Under the circumstances of the case at bar, the State's reference to its inability to call appellant's spouse was totally gratuitous and had no bearing on the case other than by way of emphasizing her failure to appear as a witness for the defense. Under these circumstances, we are constrained to hold that the trial court's failure to take any curative action constituted reversible error. See generally *Ferry v. State*, 161 Ga. App. 795 (1) (287 SE2d 732) (1982).

2. Appellant submitted the following request to charge: "A policeman has no right to arrest a defendant simply because he walks away and refuses to answer questions." The authority cited by appellant for this proposition was *Norwell v. City of Cincinnati*, 414 U. S. 14 (94 SC 187, 38 LE2d 170) (1973). The trial court refused to give this instruction and appellant enumerates that refusal as error.

The holding in the *Norwell* decision does not support the broad implication of appellant's requested instruction. *Norwell* merely stands for the proposition that a *disorderly conduct* arrest and conviction cannot be predicated upon the fact that the defendant "*verbally and negatively protested* [the] [o]fficer['s] . . . treatment of him. Surely, one is not to be punished for nonprovocatively voicing his objection to what he obviously felt was a highly questionable detention by a police officer." (Emphasis supplied.) *Norwell v. City of Cincinnati, supra* at 16. *Norwell* does not purport to evince a broad pronouncement concerning the initial authority of an officer to arrest an individual who elects to leave rather than to submit to questioning by an officer. Insofar as appellant's request intimates the existence of an inflexible rule whereby, under no circumstances, could an officer

arrest such an individual, it would be an erroneous statement of the law. See OCGA § 16-11-36. See also *Tankersley v. State*, 155 Ga. App. 917, 919 (4A) (273 SE2d 862) (1980).

Moreover, even assuming that appellant's request enunicated a correct and non-argumentative principle of law, it was not adjusted to the facts of the instant case. The precipitating factor in appellant's arrest was not "simply" that he walked away and refused to answer questions. The officer arrived at appellant's apartment complex in response to reports of gunshots. Upon his arrival, the officer saw appellant duck behind a truck. One of appellant's neighbors observed that appellant was in possession of a gun and apprised the officer of that fact. Appellant was seen taking a "shooting stance" while behind the truck, and the officer took cover. The officer overheard someone, who was apparently observing the scene from a nearby balcony, state that appellant was "reloading." When reenforcements arrived, it was discovered that appellant had abandoned his position behind the truck and may have fled to his nearby apartment. The officers converged outside appellant's apartment. According to the officers, there was no response either to their knocks on the door or to their verbal requests for appellant to present himself. Not being entirely sure whether appellant was in the apartment and whether, in view of the reports of gunshots, there might be an injured person inside, the officers determined that it was necessary to gain entry. An officer broke a pane of glass from a window in order to unlatch it. Appellant then opened fire on the officers from inside the apartment. Shortly thereafter, appellant surrendered. On these facts, it is clear that, at the time they converged outside the apartment, the officers had probable cause to arrest appellant without a warrant. See *Tankersley v. State*, supra; *Shoemaker v. State*, 165 Ga. App. 124, 125 (1) (299 SE2d 414) (1983); *Hansen v. State*, 168 Ga. App. 304 (308 SE2d 643) (1983). The officers' determination that it was necessary to gain entry into appellant's apartment was not unreasonable under the circumstances. See *Coker v. State*, 164 Ga. App. 493, 496 (297 SE2d 68) (1982). Appellant's request was not adjusted to the facts surrounding his arrest and was not erronously refused.

3. Appellant enumerates as error the trial court's sua sponte charge on aggravated assault as a lesser included offense. Appellant contends that under the evidence he was either guilty of aggravated assault on a peace officer or not guilty of any crime by reason of the justifiable defense of his habitation. OCGA § 16-3-23.

Aggravated assault is a lesser included offense of aggravated assault upon a peace officer. See *Bundren v. State*, 247 Ga. 180, 181 (2) (274 SE2d 455) (1981); *Sosebee v. State*, 169 Ga. App. 370 (312 SE2d 853); *Aldridge v. State*, 158 Ga. App. 719, 720 (2) (282 SE2d 189 (1981). The jury in the instant case was not required to believe the

officers' testimony that they had verbally identified themselves as such while standing outside appellant's apartment. Even if the jury did believe the officers in this regard, it was still authorized to believe appellant's testimony that, at the time he fired the shots from his apartment, he had not heard the individuals outside identify themselves as police officers. In either event, the jury could have concluded that appellant did not have the requisite specific knowledge that the individuals outside his apartment were in fact policemen and that he was not therefore guilty of the crime of aggravated assault on peace officers. *Bundren v. State*, supra.

Appellant asserts that if he had no knowledge that he was firing at police officers, his actions were justified and he was guilty of no crime. However, the jury was not required to accept appellant's testimony that he was a totally innocent actor in the events of the evening and that he had been awakened from sleep by the sounds of unknown individuals attempting to break into his apartment. If the jury found that the events of the evening were as the State's evidence otherwise showed and chose to believe only that appellant did not know the specific identity of the individuals outside his apartment, it still could have found that the act of firing upon the unknown individuals was not justified pursuant to OCGA § 16-3-23. Under OCGA § 16-3-23, one is justified in using deadly force *"only* if: (1) The entry is made or attempted in a violent and tumultuous manner *and* he reasonably believes that the entry is attempted or made for the purpose of assaulting or offering *personal violence* to any person dwelling or being therein *and* that such force is *necessary* to prevent the assault or offer of personal violence; or (2) He reasonably believes that the entry is made or attempted for the purpose of committing a *felony* therein and that such force is *necessary* to prevent the commission of the felony." (Emphasis supplied.)

Appellant's knowledge of the identity of the individuals as officers and his justification for firing on them were issues which were properly submitted to the jury. If the jury found that appellant lacked the requisite knowledge but also lacked the requisite justification for firing a gun at those outside his apartment, he would be guilty of aggravated assault. The trial court did not err in charging on that crime as a lesser included offense. *State v. Stonaker*, 236 Ga. 1, 2 (2) (222 SE2d 354) (1976).

4. The remaining enumeration of error addresses the trial court's refusal to strike an allegedly unresponsive answer of a State witness. We need not address this issue. It appears unlikely that this will recur at the retrial necessitated by the holding of Division 1.

*Judgment reversed. Birdsong, P. J., and Sognier, J., concur.*

Decided September 4, 1985.

Christopher A. Townley, for appellant.
David L. Lomenick, Jr., District Attorney, David L. Whitman, Assistant District Attorney, for appellee.