## A00A0601. RESPRES v. THE STATE.
### (536 SE2d 586)

MILLER, Judge.

Emanuel A. Respres was tried before a jury and found guilty of kidnapping with bodily injury, aggravated assault, false imprisonment, and two counts of possession of a knife during the commission of a crime.[1] At sentencing, the trial court merged the aggravated assault, the false imprisonment, and one count of possession of a knife during the commission of a crime into the kidnapping with bodily injury. On appeal, Respres contends the trial court erred in (1) denying his motion to suppress, (2) refusing to permit him to call the victim, Veronica Respres, as a witness, (3) admitting evidence of prior difficulties between himself and the victim, and (4) admitting hearsay statements of the victim. Respres also enumerates the general grounds. We affirm.

Viewed in the light most favorable to the jury's verdicts, the evidence revealed the following: On March 27, 1998, Jessica Henry, defendant's 14-year-old stepdaughter, and her mother, Veronica Respres (the victim), were at defendant's Douglas County home. From her bedroom, Jessica heard her mother screaming for Jessica to come downstairs. Jessica arrived and saw defendant holding her mother with his left hand and a knife with his right hand. The victim

---

[1] The trial court directed a verdict of acquittal as to Count 6, alleging cruelty to children in the second degree.

was bleeding from wounds to her neck, abdomen, and arms. Defendant fled out the back, leaving the knife on the floor.

Jessica summoned an uncle, who drove the victim to the hospital, and then she telephoned the police. The victim told the emergency room physician that her wounds were caused by her husband who was trying to kill her. The injury to her abdomen was three to six inches deep, and there were indications of significant internal injury, which was considered life-threatening. In her history to the emergency room physician and the operating room surgeon, the victim stated her husband had stabbed her with two long knives.

When defendant was arrested on March 29 in Clayton County, his pants were smeared with blood. In a videotaped interview with police, defendant stated he had been drinking a little too much (about ten beers) and that he did not "know what made [him] do it." Defendant subsequently recalled that the victim had been "arguing and fussing at him. He was tired of hearing her nagging and he just lost it." Defendant stabbed her the first time in the living room and then pulled her to the bedroom, where he stabbed her again.

1. "A person commits the offense of kidnapping when he abducts or steals away any person without lawful authority or warrant and holds such person against her will."[2] Proof that Respres held his wife at knifepoint, stabbed her with a long kitchen knife, and then dragged her from the living room to the bedroom is sufficient under the standard of *Jackson v. Virginia*[3] to authorize the jury's verdict that he is guilty, beyond a reasonable doubt, of kidnapping with bodily injury as alleged in the indictment.[4] This same evidence authorizes his conviction for possession of a knife having a blade of greater than three inches during the commission of a crime against another person, as proscribed by OCGA § 16-11-106 (b) (1).[5] Challenges to the sufficiency of the evidence for the remaining offenses are rendered moot by merging those charges at sentencing.[6] The enumeration of the general grounds is without merit.

2. The trial court did not err in permitting the stepdaughter, Jessica Henry, to relate a prior incident of violence she witnessed between defendant and the victim, where he hit the victim while they were arguing and pinned her up against the wall. "[O]ur courts have long held that evidence of prior difficulties between an accused and the victim is relevant to show the bent of mind, motive, intent, and

---

[2] OCGA § 16-5-40 (a). Furthermore, "if the person kidnapped shall have received bodily injury, the person convicted shall be punished by life imprisonment or by death." OCGA § 16-5-40 (b).

[3] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[4] *Jessup v. State*, 224 Ga. App. 176, 177-178 (480 SE2d 232) (1996).

[5] *White v. State*, 203 Ga. App. 889, 891 (4) (418 SE2d 149) (1992).

[6] *Wade v. State*, 258 Ga. 324, 326 (2) (368 SE2d 482) (1988).

course of conduct of the accused toward the victim."[7]

3. Defendant enumerates the admission of hearsay testimony identifying him as the assailant. But "by failing to object to this testimony at trial, [he] has waived his right to assert on appeal that the statements were inadmissible hearsay."[8] And any error is harmless because this evidence was cumulative of other competent evidence on the same point,[9] namely defendant's custodial statement.

4. The victim equivocated about whether she would testify, and the State's attorney could not "get a straight answer out of her. Last week it was I'm invoking my marital privilege and today it's I don't know." Before the presentation of evidence, the trial court informed the victim that both her husband's lawyer and the State's attorney wished to ask her some questions about exactly what happened to her on the night she sustained knife wounds and inquired directly: "So, once and for all, Ms. Respres, can you tell me: Are you going to testify in this case or not?" The victim replied, "I'm not going to testify against my husband, you know, as far as testifying against him, no." From this, the trial court concluded that the victim had invoked her marital privilege not to testify[10] and so was unavailable.

Once the State rested, however, defense counsel informed the court that the victim was under a defense subpoena and that he intended to call her. Counsel expected the victim to deny that she was detained or dragged anywhere and to state that she possessed two knives and had tried to kill herself. The trial court deemed it coercive and in derogation of the privilege to ask the victim/witness herself whether she would reassert her marital privilege and ruled that the defense could not call the victim to the stand.

This was, in our view, procedural error. The fact that the victim asserted her privilege during the State's case is not conclusive. The privilege not to incriminate one's spouse at the behest of the State is different from the privilege not to testify for one's spouse. It follows that the victim should have been summoned to state her intentions before the presiding judge[11] whether she would testify at the behest of her husband or reassert her privilege. But this error does not require reversal and a new trial, because defendant failed to show harm. Nowhere does the record (including the transcript of the hearing on the motion for new trial) indicate that the victim would have

---

[7] (Citations omitted.) *Bohannon v. State*, 208 Ga. App. 576, 579 (2) (b) (431 SE2d 149) (1993). See also *Roberts v. State*, 123 Ga. 146, 156-160 (5) (51 SE 374) (1905).

[8] *Pollard v. State*, 238 Ga. App. 253, 254-255 (2) (518 SE2d 463) (1999).

[9] *Assad v. State*, 195 Ga. App. 692, 693 (2) (394 SE2d 617) (1990).

[10] "Husband and wife shall be competent but shall not be compellable to give evidence in any criminal proceeding for or against each other." OCGA § 24-9-23 (a).

[11] See *Price v. State*, 175 Ga. App. 780 (1) (334 SE2d 711) (1985) (defendant is entitled to have spouse make election outside the presence of the jury).

testified if called by her defendant husband. In the absence of proof that the victim would have waived her privilege if called, defendant has failed to meet his burden to show harm as well as error.[12]

5. Defendant moved to suppress the tangible evidence gathered by police from his apartment without a search warrant.

> When the police come upon the scene of [an attempted] homicide they may make a prompt warrantless search of the area to see if there are other victims or if the killer is still on the premises. The need to protect or preserve life or avoid serious injury is justification for what would otherwise be illegal absent an exigency or emergency. And the police may seize any evidence that is in plain view during the course of their legitimate emergency activities.[13]

Here, the trial court correctly ruled that investigating officers were entitled to secure and seize bloody knives and other evidence in plain view.[14]

*Judgment affirmed. Pope, P. J., and Smith, P. J., concur.*

DECIDED JUNE 29, 2000.

*James M. Allison, Jr.*, for appellant.
*David McDade, District Attorney, Christy E. Draper, Assistant District Attorney*, for appellee.

---

[12] Compare *Gay v. State*, 220 Ga. App. 78, 79 (467 SE2d 383) (1996).
[13] (Citations and punctuation omitted.) *Delay v. State*, 258 Ga. 229, 230 (2) (b) (367 SE2d 806) (1988).
[14] *Casillas v. State*, 233 Ga. App. 752, 757 (4) (505 SE2d 251) (1998) (whole court).