A02A0254. JACKSON v. THE STATE.
(564 SE2d 865)

SMITH, Presiding Judge.

John Matthew Jackson was indicted by a Clayton County grand jury on one count of kidnapping with bodily harm, one count of false imprisonment, one count of simple battery, and one count of cruelty to children in the second degree. The jury acquitted him of false imprisonment and cruelty to children and convicted him of kidnapping with bodily harm and simple battery. He appeals, asserting five enumerations of error. Finding no error, we affirm.

1. In two enumerations of error, Jackson asserts the general grounds with respect to his conviction for kidnapping with bodily injury.

Construed to support the jury's verdict, the evidence shows that a Clayton County 911 operator received a call from a young male child at 10:04 p.m. on October 8, 1999. On the tape, which was played for the jury, the child stated that "[m]y dad is hitting my mama" and that his mother was outside in the front yard, screaming. An officer with the Clayton County Police Department answered the call to Jackson's home in Riverdale at 10:05 and arrived at the home at 10:15. He found Jackson's ten-year-old son standing screaming in the front yard with a butcher knife in his hand and Jackson's thirteen-year-old son inside the house, holding a golf club and crying. The officer asked the younger child what had happened; he told the officer that his parents had been arguing and he heard his mother ask Jackson not to hit her again. Then his father put his mother in the car and drove away as she was pleading, "don't make me go." The older child told the officer that his mother was in her nightgown and that she told Jackson she did not want to leave with him. The children told the officer that Jackson forced their mother into the vehicle.

According to the officer, the time elapsed between his arrival and his conversation with both children was "less than a minute."

Meanwhile, at a shopping center across the nearby county line in Fulton County, two retired firemen saw a man and woman scuffling in a car; it appeared that the woman was trying to get out of the car and the man was trying to keep her inside. They followed the car and saw the woman "rolling, tumbling, in the street." One testified that the car turned around and ran over the woman. Another witness was in the area at the same time and saw a car strike what he believed to be a deer, but he realized it was a woman when she sat up. The driver, who was identified in court as Jackson by this witness, turned around in the middle of the road, went back into the shopping center driveway, and ran over the woman again. He repeatedly turned around and ran over the woman a total of four times. As this witness and another man ran up to the car, Jackson got out near the woman and tried to get her into the car, yelling, "Get up, there's nothing wrong with you." The woman was badly injured, "split wide open from her stomach all the way down to her pelvis." Jackson was very angry and said that he was not going to let his wife leave him and would rather kill her. A crowd gathered, and a state patrolman who witnessed the immediate aftermath of the incident took Jackson into custody to prevent the crowd from harming him. A Fulton County officer arrested Jackson and attempted to read him his *Miranda* warnings, but Jackson shouted at him, "I don't need a lawyer, I'm guilty. . . . [I]t's okay, I did this, I hurt my baby, I don't want a lawyer." The mother spent approximately four months in the hospital, and a nurse testified to the severity of her injuries.

The mother was called as a witness by Jackson and testified that she had been having an affair, and Jackson learned of it. He confronted her about it that night, they argued, and she attacked him. When he said he was going to leave and take the children, she pleaded with him not to go and followed him out of the house voluntarily because she wanted to talk to him. She denied that he dragged her into the car and testified that she entered the car of her own free will. She testified that she jumped out of the car in an attempt to commit suicide and that she remembered nothing after jumping from the car.

The children were called as witnesses by Jackson. The younger child testified that he called 911 but did not remember anything he told the 911 operator or the police officer other than telling the 911 operator that his father was hitting his mother. He denied telling the police officer that Jackson dragged his wife out of the house or forced her into the car. The older child also testified that he did not remember anything he told the police officer. Jackson testified, contending that he and his wife voluntarily left the house because they did not

want to argue in front of the children, that she was the aggressor, that she kept trying to jump from the car and finally succeeded, and that he ran over her accidentally and only once. The State called an accident reconstruction expert on rebuttal, who testified from his examination of the scene and the distribution of flesh and body parts on the roadway that the victim was run over more than once.

Jackson argues that the State failed to prove the element of asportation against the will of the victim, contending that the only evidence that Jackson took the victim against her will was inadmissible hearsay introduced through the testimony of the children. This contention is incorrect, as discussed in Division 2, below. Moreover, other witnesses testified that they saw the victim attempting to jump from the car as Jackson attempted to hold her. Although the victim explained this by contending she was attempting to commit suicide and Jackson was trying to restrain her, the jury was entitled to reject that explanation and conclude that she was attempting to escape and that Jackson had taken her into the vehicle against her will. "Kidnapping is not a continuing offense, and only the slightest movement of the victim is required to establish the element of asportation." (Citations omitted.) *Burney v. State*, 237 Ga. App. 765, 767 (2) (516 SE2d 802) (1999).

> An appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence to convict is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Conflicting testimony is a matter of credibility for the jury to resolve. As long as some competent evidence exists, even though contradicted, to support each fact necessary to make out the State's case, we will uphold the jury's verdict.

(Citations and punctuation omitted.) *Wheeler v. State*, 236 Ga. App. 197, 198 (1) (511 SE2d 564) (1999).

2. Jackson contends that the trial court erred in admitting the children's statements to the police officer regarding what their mother said in violation of the hearsay rule, contending this was "double hearsay." But the trial court correctly admitted these statements as part of the res gestae. Res gestae declarations are those "accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought." OCGA § 24-3-3.

> [W]hat the law altogether distrusts is not after-speech but afterthought. In cases when a statement is narrative rather than exclamatory, the circumstances must be closely scrutinized, because narrative is generally the result of after-

thought. If the declarations appear to spring out of the transaction — if they elucidate it — if they are voluntary and spontaneous, and if they are made at a time so near to it, as reasonably to preclude the idea of deliberate design, then they are to be regarded as contemporaneous. However, no precise time can be fixed a priori when the res gestae ends, but each case must turn on its own circumstances, the inquiry being rather into events than to the precise time which has elapsed.

(Punctuation and footnote omitted.) *Sims v. State*, 234 Ga. App. 678, 682 (2) (507 SE2d 845) (1998). We will affirm a trial court's decision to admit res gestae statements unless that decision is clearly erroneous. *Robinson v. State*, 197 Ga. App. 600, 601 (2) (399 SE2d 94) (1990).

Here, the trial court correctly concluded that both the mother's statements and the children's later statements to the police officer were part of the res gestae. The mother's statements were made while the incident was actually in progress and one of the children was on the telephone with the 911 operator recounting the altercation as it occurred. A policeman arrived ten minutes later to find the children obviously distraught, crying and screaming, holding makeshift weapons, and in separate locations on the property. He took their statements separately and immediately. Under these circumstances, the statements sprang out of the incident itself, were exclamatory rather than narrative, and were made without premeditation or afterthought.

Moreover, both the victim and the children testified at trial and were subject to cross-examination. They either gave testimony inconsistent with the earlier statements or testified that they could not recall them. "A party may introduce a prior consistent statement of a forgetful witness where the witness testifies at trial and is subject to cross-examination." (Footnote omitted.) *Manning v. State*, 273 Ga. 744, 745 (3) (545 SE2d 914) (2001). The trial court did not err in admitting the witnesses' statements.

3. Jackson complains of the number of witnesses called by the State to testify to the final events of the incident, which were not relevant to the charges against him because they occurred in Fulton County. Citing a definitional section of the evidence code, OCGA § 24-1-1, he contends that the trial court erred in allowing multiple witnesses to testify to his running over the victim with his car. He asserts that "[c]ase law in this area specifically states that any evidence that is cumulative in nature will be generally inadmissible as irrelevant," but he cites no authority for this assertion, and we have found none. In contrast to Jackson's assertion, the case law in this

area typically considers cumulative evidence in a "harmless error" context. Properly admitted cumulative evidence will cause the erroneous admission of similar but inadmissible evidence to be treated as harmless error. See, e.g., *Bellamy v. State*, 272 Ga. 157, 161 (7) (527 SE2d 867) (2000). In the only decision we have found that is even remotely on point, this court affirmed the trial court's exclusion of *inadmissible* evidence of a civil plaintiff's arrest for a drug offense, noting that the evidence would have been cumulative of other evidence for any proper purpose the defendant had alleged, such as the plaintiff's post-injury activities. *Howard v. Harn*, 163 Ga. App. 771, 772 (2) (295 SE2d 349) (1982).

More than one witness may testify to a fact, and more than one document may be introduced to prove a fact. *Warren v. Gray*, 90 Ga. App. 398, 402 (7) (83 SE2d 86) (1954). Even if the State presented multiple witnesses, "[t]he fact that their testimony was corroborative or cumulative to other evidence did not make it inadmissible." *Clark v. State*, 138 Ga. App. 266, 273 (10) (226 SE2d 89) (1976). The testimony did, as Jackson concedes, prove the bodily injury component of the kidnapping charge. But Jackson is incorrect in his contention that this was the *only* legitimate purpose of the testimony and that the State's sole motivation in calling multiple witnesses was to emphasize the gruesome nature of the attack and his wife's injuries. The witnesses were present at different times and vantage points and testified to different facts, such as Jackson's multiple statements at the scene. This testimony showed not only the victim's injuries but also Jackson's intent and state of mind during an ongoing incident that coincidentally crossed a nearby county line while "in continuous progress to its catastrophe." (Citations and punctuation omitted.) *Vick v. State*, 211 Ga. App. 735, 737 (2) (440 SE2d 508) (1994). Moreover, the trial court repeatedly gave a cautionary instruction to the jury that it was not to consider this evidence with regard to "crimes, if any, that may have occurred in a different county."[1] These were matters properly to be considered by the jury, and the trial court did not err in allowing the witnesses to testify.

4. Finally, Jackson contends the trial court erred in allowing the State to call in rebuttal an accident investigator from Fulton County who investigated the collision at the shopping center and prepared diagrams of the scene. Jackson relies on *Allison v. State*, 256 Ga. 851,

---

[1] Jackson acknowledges that the trial court gave these limiting instructions, but contends they were given "in a flippant manner thus negating its effect." But, as Jackson also acknowledges, this contention does not appear anywhere in the record, and Jackson did not interpose any objection to the trial court's instructions. He therefore has waived his right to assert this objection on appeal. *Williams v. State*, 244 Ga. App. 26, 27 (2) (535 SE2d 8) (2000).

853 (8) (353 SE2d 805) (1987), decided with reference to a repealed statute. He asserts that the witness was not on the State's witness list and that he was not given sufficient notice of the testimony or time to review it. After reviewing the unique circumstances of this case, *Thompson v. State*, 237 Ga. App. 91, 93 (2) (514 SE2d 870) (1999), we disagree.

The prosecutor stated in her place that the Fulton County police officer who testified as one of the State's witnesses had disclosed to her the existence of this accident reconstruction expert on the first day of trial and that she had not known of him or the documents he prepared before that time. The officer went to Atlanta, retrieved the diagram of the accident scene from the expert, and "brought it straight to the courtroom," giving defense counsel an opportunity to examine it. The prosecutor further stated that she saw the evidence for the first time when defense counsel did. She also told defense counsel that she did not intend to use this evidence unless Jackson testified inconsistently with the facts revealed by the accident investigation. When Jackson insisted that he had run over the victim only once and that it was an accident, the State offered the testimony of the accident reconstruction expert to show that the victim was run over more than once.

In *Allison*, supra, the State was found to have engaged in misconduct by deliberately withholding the testimony of three expert witnesses who were properly part of the State's case-in-chief. Here, in contrast, the State did not intend to use the testimony unless Jackson contradicted it. When Jackson testified that he ran over his wife unintentionally and only once, the State called the witness. "This is classic rebuttal evidence." *Thompson*, supra at 94 (2). Moreover, the record does not affirmatively demonstrate that "the state withheld the identity of witnesses important to the state's main case in order to lull [Jackson] into testifying or to deny him the opportunity of preparing a defense relative to such testimony." Id.

> Rebuttal testimony should not be excluded merely because the state could have introduced it during its main case. Each case must be decided on its own merits. It is the importance of the evidence to the state's main case and whether the withholding was intended or designed to deny the defendant an opportunity to prepare his defense in relation to that evidence which will determine if reversible error has occurred. [Cit.]

Id. at 93 (2).

Jackson also contends that the diagrams prepared by the accident reconstruction expert are "scientific reports" and could not be

used absent disclosure, citing *Wheeler v. State*, 203 Ga. App. 831, 832 (418 SE2d 112) (1992). But in *Wheeler*, it was not disputed that the State had the report in its possession and never provided a copy to the defendant. Id. Here, the only evidence of record shows that the State disclosed the existence of the documents and provided them to Jackson's counsel as soon as it learned of them. When, as here, the prosecution and defense both view the evidence for the first time simultaneously, the statute is not violated. *Crawley v. State*, 240 Ga. App. 891, 892 (1) (525 SE2d 739) (1999). Moreover, "when a written scientific report is furnished late, the appropriate remedy 'perhaps' is to grant a continuance or recess upon timely request by the defendant." *Wilburn v. State*, 199 Ga. App. 667, 669 (3) (405 SE2d 889) (1991) (full concurrence as to Division 3). Once Jackson was aware of the documents, it was incumbent upon him to move for a continuance or recess if he required more time to examine them, and he failed to do so. The trial court therefore did not abuse its discretion in declining to exclude the accident scene diagrams or in allowing the State to present this evidence on rebuttal.

*Judgment affirmed. Eldridge and Ellington, JJ., concur.*

DECIDED MAY 7, 2002.

*Stanley W. Schoolcraft III*, for appellant.

*Robert E. Keller, District Attorney, Bonnie K. Smith, Assistant District Attorney*, for appellee.