A05A0981. CARTER v. THE STATE.
(621 SE2d 503)

SMITH, Presiding Judge.

Ramey Carter was indicted by a Ware County grand jury on one count of kidnapping. He was found guilty, his motion for new trial was denied, and he appeals, asserting the general grounds and error in the trial court's handling of a witness who invoked the marital privilege. Finding no error, we affirm.

1. We first address the general grounds.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and the appellant is no longer entitled to a presumption of innocence. An appellate court does not weigh evidence or determine witness credibility, but determines only if the evidence is sufficient under the standard of *Jackson v. Virginia*[, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979)] to support a finding

---

> of guilt beyond a reasonable doubt. Conflicts in testimony and questions about witness credibility are matters for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary for the state's case, the jury's verdict will be upheld.

(Citations, punctuation and footnotes omitted.) *Edwards v. State*, 271 Ga. App. 415, 416-417 (609 SE2d 741) (2005). Construed to support the jury's verdict, the evidence shows that Carter and the victim, his wife, had a stormy relationship. A few weeks before this incident, the victim's brother had called her to let her know that Carter was coming to Waycross. The brother did so because he was concerned for her safety. He testified that the victim was "scared." He called Carter and told him not to hurt his sister; Carter responded, "I'm going to get locked up for a long time, and I want to spend some time with her." The victim's brother told Carter that he would meet him to pick up his sister, but he was unable to find Carter or his sister.

On October 4, 2003, a Waycross city police officer responded to a call from a grocery store parking lot. When he arrived, he spoke to Suzanne Cox, who appeared "scared" and "nervous." She told the officer that she and the victim had been riding together in a pickup truck when Carter, driving another vehicle, cut them off and blocked their path by pulling in front of them. She said that Carter approached the truck, pushed the victim across the seat, entered the truck, and "drove off at a high rate of speed." She observed that the victim was "fighting him as they drove off through the parking lot." In a later interview with a detective at the Waycross Police Department, Cox stated that she was afraid for the victim and that Carter was upset and angry to the point that she was unable to talk with him. She also stated that Carter pushed her to the ground as he got in the truck and that the victim locked her legs around the steering wheel in an attempt to keep Carter from dragging her out of the truck.

An eyewitness testified that Carter got out of his vehicle, went over to the truck, pulled a woman out, pushed her to the side as she "struggled to get back in," and then "drove off spinning." As the truck passed her, the witness heard screaming from inside. Another witness testified that she saw a woman knocked down as a truck was "taking off really fast out of the parking lot." Another woman inside the truck was "[f]ighting to try to get out."

Carter and the victim disappeared until six days later, when the Jacksonville, Florida sheriff's office called the victim's mother to pick her up. The victim's mother and aunt testified that the victim was covered with bruises and other injuries requiring hospital care, that she was dirty and unkempt, and that she was still in the same clothes she was wearing when she disappeared. The victim's mother also

testified that she had to take in the victim's children because the victim had made no arrangements for their care before she disappeared. The victim's cell phone was found on the side of a highway leading to Jacksonville by a Department of Transportation employee, who turned it over to the sheriff's office.

The victim invoked the marital privilege and declined to testify. Cox, a long-time family friend, indicated that she did not "want to be here" and testified that she was unable to remember much of what she had reported to the police officer on the scene. She did testify, however, that the victim did not want to go with Carter. The officers who interviewed Cox testified to her original statements.

Carter denied that he confronted his wife and Cox at the grocery store; instead, he testified that he met Cox at another location, that she suggested that they follow his wife to the grocery parking lot, and that they rode together to that location. He denied having cut off the victim's truck, denied forcing the victim to stay in the truck, and denied that Cox tried to intervene. He suggested that the victim's injuries resulted from her attacking him and that she "does bruise easily."

Carter argues that the State failed to show that the victim was taken or held against her will because she did not testify and the circumstantial evidence was insufficient. However, this contention is controlled by the very similar case of *Jackson v. State*, 255 Ga. App. 279 (564 SE2d 865) (2002), which also involved circumstantial evidence as well as witnesses claiming faulty recollection at trial. In *Jackson v. State*, the defendant was convicted of kidnapping with bodily injury after he took his wife from their residence and ultimately ran over her with his truck. Jackson's wife did not assert her marital privilege but instead testified that she was not kidnapped, that she went with her husband voluntarily, that she attempted to kill herself by leaping from the truck, id. at 280, and that the struggle witnessed by bystanders was Jackson's attempt to prevent her suicide. Id. at 281. The jury chose to disbelieve her testimony and believe that of the eyewitnesses, who testified that she did not willingly go with her husband. Two witnesses, the couple's children, testified at trial that they did not remember what they told the police officer who answered their 911 call. Id. at 280. We held that the children's contemporaneous reports were admissible both as part of the res gestae and as prior inconsistent statements. Id. at 282 (2).

Carter argues that the jury should have given more weight to the fact that the parties were involved in "an emotional relationship," and that therefore the circumstantial evidence only showed a battery rather than kidnapping. But this argument was for the jury, not an appellate court, and Carter took full advantage of his opportunity to set forth this interpretation during his cross-examination of the

witnesses. It was for the jury to decide the weight to be given the eyewitness testimony concerning the victim's fear, resistance, and attempts to escape the vehicle, including Cox's earlier inconsistent statements to police investigators. *Jackson v. State*, supra at 281 (1). Viewed in the light most favorable to the verdict, the evidence was sufficient to authorize a rational trier of fact to find Carter guilty of kidnapping beyond a reasonable doubt under *Jackson v. Virginia*, supra.

2. Before the trial began and outside the presence of the jury, the prosecutor informed the trial court that she expected the victim to invoke the marital privilege. The trial court responded that it would handle that matter when the witness was called. Carter raised no objection. During the trial, when the trial court instructed the prosecutor to call her next witness, she responded, "Judge, at this point in time, we would call [the victim]. Judge. . . ." The trial court immediately stated, "I understand that. Now, Mr. Bailiff, take the jury to the jury room." Carter again did not object. After the jury was excused, the victim took the stand, was sworn, and the prosecutor questioned her. She stated that she wished to invoke the marital privilege and was excused. At that time, Carter moved for a mistrial, arguing that under *Colson v. State*, 138 Ga. App. 366 (226 SE2d 154) (1976), the State "is not allowed to require the wife to go to the witness stand in the presence of the jury." After some colloquy, the trial court observed that *Colson* forbade " 'compelling her on examination before the jury to refuse to offer testimony.' She has not refused in the presence of the jury," and denied the motion. The jury then returned to the courtroom, and examination of the next witness proceeded.

On appeal, as at trial, Carter contends that the mere statement by the prosecutor that the State intended to call the victim as a witness constituted a negative inference that she was somehow prevented from testifying and thus amounted to reversible error. But as the trial court correctly observed, *Colson* forbids "requiring the wife to make an election as to whether she will testify against her husband in the presence of the jury." *Colson*, supra at 370 (16). See also *Westbrook v. State*, 162 Ga. App. 130 (1) (290 SE2d 333) (1982) ("the election of one spouse to testify against the other should be made outside the presence of the jury under normal circumstances"). While Carter contends that merely announcing the victim's name in the jury's presence constitutes reversible error, the decisions do not so hold. *Price v. State*, 175 Ga. App. 780 (334 SE2d 711) (1985), relied on by Carter, forbids the creation by the State of "an unwarranted negative inference against the defendant." (Citation and punctuation omitted.) Id. at 781. In *Price*, we reversed on the basis of the prosecutor's "totally gratuitous" reference in closing argument to the State's inability to call the appellant's spouse. Id. at 782 (1).

Here in contrast, Carter seeks to draw an inference merely from the identification of the victim as a witness. Many other reasons exist, however, for a witness to be identified but never take the stand; the witness could be unavailable due to an invalid subpoena, a scheduling conflict, or illness. A better practice would be for the State simply to announce to the trial court that it had an unspecified matter to take up outside the presence of the jury. But the mere announcement of a witness's name, without more, does not constitute the creation by the State of an "unwarranted negative inference" as forbidden by *Price*.

Moreover, Carter himself referred to his wife's refusal to testify during the State's cross-examination, remarking to the prosecutor, "seemed like she would have wanted to have got up here and said something about it, but she don't. Y'all the one that's pushing this." Carter's statement is a far more direct reference to the marital privilege than the mere inference Carter contends the jury could have drawn from the victim's name being mentioned by the State.

In any event, Carter failed to move timely for a mistrial. Since Carter's objection was to the mention of the victim as a witness in the jury's presence, his motion for mistrial should have been made at that time, rather than after the jury was excused, the witness examined, and her election not to testify made. "The motion for mistrial came too late. Objection should have been made immediately upon the asking of the question. Absent timely objection or motion, there was no error. [Cits.]" (Punctuation omitted.) *Frazier v. State*, 249 Ga. App. 463, 465 (4) (549 SE2d 133) (2001).

*Judgment affirmed. Ellington and Adams, JJ., concur.*

DECIDED SEPTEMBER 13, 2005.

*John C. Culp*, for appellant.
*Richard E. Currie, District Attorney, Melanie J. Brogden, Assistant District Attorney*, for appellee.